GUSTAVUS A. AUSTIN, Executor of APOLLOS AUSTIN, *v.* TABOR C. IMUS, CORRILL MERRILL AND JONAS N. SMITH.

*Computation of interest.   Note executed in another state.   Annual interest.*

As between the parties to a promissory note, executed in the state of New York, and made payable generally, interest will be allowed after the rate of six *per cent.*, if it appear, from the circumstances attending the execution of the note, that it was the expectation and intention of the parties, that it would be paid in this state.

And the same rule will be applied, in case of a negotiable note held by an indor-see for value, if it appear, that the indorsee received the note when over due.

There is no difference between a note made payable with " *annual interest,*" and a note made payable with "*interest annually.*"

Upon a note for the payment of money with interest annually, interest is to be cast upon that interest, from the time it becomes due until the note is actually paid.

EJECTMENT for land in Addison.   The plaintiff claimed title by virtue of a mortgage deed, executed by the defendant Imus to Samuel B. Wellington, dated January 20, 1837, and by him assigned to the plaintiff's testator, October 26, 1842.   Judgment having been rendered for the plaintiff, the defendants filed a notice to be allowed to redeem, according to the statute.

It appeared, that Wellington, who resided at *the time* in Addison, in this state, sold and conveyed to Imus, who was a resident of Moriah, in the state of New York, the farm in Addison, upon which Wellington then resided,—reserving to himself, by the deed, the use of one half of the dwelling house on the premises and one half of the fruit thereon, if he should want them for the use of himself or his family, for the term of three years.   This deed was dated January 20, 1837, and was executed at Moriah.   At the same time and place Imus executed to Wellington three promissory notes, for the purchase money of the farm,—one for $500,00, payable January 15, 1839, with annual interest,—one for $500,00, payable January 15, 1840, with annual interest,—and one for $1000,00, payable January 15, 1838, with interest.   Each of these notes was expressed to be

" for value received in Moriah," and was made payable to Welling-
ton, or bearer.  The mortgage deed, under which the plaintiff claimed
title, was executed to secure the payment of these notes.  Immediately
after the purchase Imus removed into this state, upon the farm, and
Wellington continued to reside upon the farm about one year, and
then removed to the state of New York.

The defendants insisted, that only six *per cent.* interest should be
computed upon the notes from their date to the time of the judg-
ment, and that, upon the two notes payable with annual interest, an-
nual interest should only be computed to the time when the notes
fell due, and after that, only simple interest should be computed
upon them.

The court decided, *pro forma,* that seven *per cent.* interest should
be computed npon the notes from their dates respectively to the time
of the judgment, and that, upon those notes which were made payable
with interest annually, annual interest should be computed and paid,
as well after these notes fell due, as before.  To which decision
the defendants excepted.

*P. C. Tucker* and *P. C. Tucker, Jr.,* for defendants.

1. The notes must have been understood by the parties to be pay-
able in Vermont.  If only such an *implied* understanding existed, it
is sufficient to limit the rate of interest upon them to that allowed
by the laws of this state.  *Evarts* v. *Nason,* 11 Vt. 122.  If the
place of performance be not named in the notes, it is to be ascer-
tained by the circumstances attending the making of the contract.
It is not an absolute inference, that the place, where the notes are
dated, is necessarily to be taken as the place of payment.  *Peck et
al.* v. *Mayo et al.,* 14 Vt. 38.  Unless the place of the date of these
notes be treated as conclusive, there is no evidence in the case, that
the parties intended, that they should be payable in New York, or
governed by the laws of that state.

2. Annual interest should have been computed on the two $500,00
notes to the time when they were respectively payable, and after that
time simple interest only should have been computed on them.  The
rule established by the supreme court,—1 Aik. 410,—allows interest
to be cast as annual interest from the time the contract falls due to
the time only of the payment of the contract itself, and adds, that

" interest upon interest is not allowed." As to running accounts the last part of this rule is established. *Wheelock* v. *Moulton et al.*, 13 Vt. 430. In Massachusetts, upon a bill to redeem, only simple interest is computed upon the mortgage debt; *Reed* v. *Reed,* 10 Pick. 398; 10 Am. Jur. 220; and in an action upon a note payable with interest annually, the payee cannot, without demanding his interest, be permitted to compound it; *Wilcox* v. *Howland,* 23 Pick. 167. *Hastings* v. *Wiswall,* 8 Mass. 455. In *Catlin* v. *Lyman et al.,* 16 Vt. 44, the court say, parties cannot stipulate in advance, either for compound or what is termed annual interest, to be reckoned for a succession of years. This would be to control the mode of computation fixed by the statute, and, if not usurious, it is oppressive and illegal."

*H. Hale* and *A. Peck* for plaintiff.

The notes were made and dated in New York, (where the maker then resided,) and must draw the rate of interest allowed by the laws of that state. The *lex loci contractus* governs, unless the contract expressly provide for performance in another country. A contract payable generally, without naming any place of performance, is governed by the law of the country, where it is made. Story's Confl. of Laws §§ 279, 291, 295, 296, 317. *Vanschaik* v. *Edwards,* 2 Johns. Cas. 355. It makes no difference, that the debt, or contract, is secured by mortgage on real estate in another country. The debt is the principal, and the mortgage, being but an incident for the security of the debt, cannot change the personal liability of the debtor, or impair the rights of the creditor under the contract, which it was intended to secure. Story's Confl., §§ 287, 288, 291, 293. *Stapleton* v. *Conway,* 1 Ves. 427. 3 Atk. 727. Nor is the case taken out of the rule by the fact, that the property, which is the consideration of the debt, or contract, is situated in another country, whether such property is personal or real estate. 1 Ves. 427. 3 Atk. 727. *Dewar* v. *Span,* 3 T. R. 425. 2 Johns. Cas. 355. *Hosford* v. *Nichols,* 1 Paige 220. 2 Atk. 382. The defendant, having given negotiable notes and put them afloat, has so far separated the debt from the original consideration, as to subject it to the general principles of commercial law; and it is a fundamental principle of that law, that negotiable paper is to be interpreted exclusively by what

Austin, Ex'r, *v.* Imus et al.

appears on its face and cannot be controlled by extraneous evidence. *U. S. Bank* v. *Lyman et al.*, 20 Vt. 668. Upon the face of these notes they draw seven *per cent.* interest; and the plaintiff, being an indorsee without notice, cannot be affected by this extrinsic evidence.

The mode of computation, adopted by the court below, was correct. The notes, in terms, were payable with interest annually; and there is no difference, in this respect, between interest accruing before and interest accruing after the note falls due. The stipulation, in a note on time, to pay interest, binds the maker to pay interest, until the note is paid, and not merely until it falls due. The same principle ought to apply to a note payable with interest annually. *Catlin* v. *Lyman*, 16 Vt. 44. 1 Aik. 410. *Newell* v. *Jones*, 4 C. & P. 124; [19 E. C. L. 304.] *Dunshee* v. *Parmele, Adm'r*, 19 Vt. 172.

The opinion of the court was delivered by

KELLOGG, J. The questions arising in the case relate to the *rate* of interest to be allowed upon the notes described in the mortgage deed, and to the manner of computing the interest. The notes in question were executed at Moriah, in the state of New York, where the maker then resided, and were given for the farm embraced in the mortgage. They were made payable to Wellington, (who then resided upon the farm,) or bearer, and without designating any particular place of payment. And the question arises, is the holder of the notes entitled to seven *per cent.* interest,—the rate allowed by the laws of New York, where the notes were made,—or to six *per cent.*,—the rate of interest allowed by the laws of the state, where the consideration for the notes was situated and where the payee then resided.

It is well settled, as a general rule, that the *lex loci contractus* must govern the rate of interest, where the contract does not *provide* for its performance in another jurisdiction, or where the contract has nothing upon its face, and there is nothing in the circumstances attending the making of the contract, indicating that it is to be performed in another jurisdiction. It is equally well settled, that where the contract provides for its performance in another jurisdiction, the

XXIII.      37

rate of interest will be controlled by the laws of the latter place; and, as between the *immediate parties* to the contract, if there are any circumstances attending the transaction, which render it reasonably certain, that the parties, at the time, contemplated its performance in a different jurisdiction from the one where the contract was made, the rate of interest will be regulated by the laws of the place, where the parties expected and intended it should be performed.

But it is said, that the *plaintiff* cannot be affected by any circumstances, (if such exist,) indicating the understanding of the parties, that the contract was to be performed at a place other than the one where it was made, inasmuch as this does not appear upon the face of the contract, and it being negotiable paper, taken by the plaintiff *in the ordinary course of business, and without knowledge of such* understanding.

This proposition is certainly entitled to consideration, and we are not prepared to say, it is not sound, when applied to a case of the purchase of negotiable paper, while current, and before it comes to maturity. In such case, there would seem to be great propriety in sustaining the proposition. But it does not, as we think, become necessary to decide that point in disposing of the case. It is deemed a sufficient answer to the ground thus assumed by the plaintiff, that the notes, when he purchased them, were not current, but were overdue from two to four years,—as appears by the deed of assignment. Consequently, the plaintiff took them subject to all equities, and the defendant may avail himself of the matter relied upon, the same as if the suit were in the name of Wellington, the payee.

The inquiry then arises, do the facts and circumstances disclosed in the case justify the conclusion, that the parties, at the time the contract was executed, had in contemplation its performance in this state? It is open to remark, that the notes in question contain a singular and unusual expression, calculated to attract the attention of those who should see them. Instead of their being written in the usual form, they read thus,—" For value received *in Moriah*," &c. What the design was, in drawing the notes in this peculiar manner, does not appear, nor is it, perhaps, important to determine. It was calculated to attract attention, but does not affect the validity of the notes. It will be borne in mind, that the land, the conveyance of

which formed the consideration of the notes, was situated in this state, that Wellington, the payee, then resided upon the farm, and, from the reservations contained in the deed, reserving to himself one half the house and half the fruit for three years, and the farther fact, which appears, that he and his family did reside there one year after the sale, we think it quite evident, that the parties, at the time of the contract, contemplated that Wellington would continue to reside in the house the entire three years, during which time all the notes would fall due.   Upon these facts we can hardly entertain a doubt, that at the making of the contract the parties contemplated and understood, that its performance was to be in Vermont.   Such, we think, was the intention of the parties.   Consequently, the interest upon the notes should be cast at six *per cent.*, in conformity to the law of this state.

A farther question is made, as to the *manner* in which the interest upon two of the notes should be cast,—they being payable with annual interest.

It is not claimed, that there is any difference between " annual interest" and interest annually.   There is no legal distinction.   Both mean the same thing.   They entitle the party to have his interest computed in conformity to the rule laid down in 1 Aik. 410.   It is, however, insisted, that by that rule the computation of annual interest must be limited to the time, when the contract falls due.

Such is not the construction put upon the rule by this court.   In *Dunshee* v. *Parmelee*, 19 Vt. 172, this question was before the court, upon a computation of interest precisely like the one adopted by the county court in this case; and although the point was not decided, (though noted upon the briefs of counsel,) for the reason that it was not argued, the court express no disapprobation of the rule; but the computation was in conformity to long established usage.   Such we believe to have been the construction generally put upon the rule in Aikens, and it seems to us to be the correct construction.   " Interest upon a contract for the payment of interest annually is to be cast upon that interest after the same falls due, up to the time of payment."   Up to the time of payment, as here used, means the time when the contract is actually paid.   It is not to be limited to the time, when the contract falls due.   The computation of the annual

interest having been· made by the court below in conformity to this, it is satisfactory.

The judgment of the county court, directing the interest upon the notes to be cast at seven *per cent.*, is reversed, and the interest will be cast upon all the notes at six *per cent.*, and interest upon the annual interest up to the time of the decree, and judgment entered for the amount, according to the agreement of the parties.