## THE PEOPLE *v.* DAVID F. BATCHELDER.

OCCUPANCY OF AN ISLAND FOR GATHERING THE EGGS OF WILD BIRDS.—Persons in the casual and temporary occupancy of an island, a part of the public domain, engaged in the pursuit of hunting, fishing, or gathering the eggs of wild birds deposited there, and who do not occupy the land for purposes of husbandry, residence, or commerce, are not in such possession of the same as to entitle them to exclude others who desire to occupy it for a like purpose, or to justify them in resisting by force others who attempt to land upon it to engage in the same pursuit.

JUSTIFIABLE HOMICIDE.—If several persons are on an island, a part of the public domain, engaged in gathering the eggs of wild birds deposited there, and others attempt to land there to engage in the same pursuit, and their attempt to land is

resisted by force by the party first there, they are justified in using such force as may be necessary to effect their object; and if one of the opposing party is slain, it will be justifiable homicide.

Same.—If the persons attempting· to land on the island are armed with guns, this does not affect their right to land; and if they are attacked by those on shore with deadly weapons and muderous intent, and their lives placed in danger, they are not obliged to retreat, but may stand their ground, and, if need be, kill their assailants.

Appeal from the District Court, Twelfth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Van Arman, Lane & Howe*, for Appellant.

*J. G. McCullough, Attorney-General*, for the People.

By the Court, Currey, J.

The defendant was indicted by the Grand Jury of the City and ·County of San Francisco, for the crime of manslaughter in the killing of Edward Perkins at the Farallone Islands, on the 4th of June, 1863. The defendant pleaded not guilty, and was afterward tried and convicted and sentenced to be imprisoned in the State Prison for one year. From this con-·viction and judgment he has brought the case to this Court upon a statement embodying all the testimony produced on the trial, in which is contained the charge of the Court to the jury, and also certain requested instructions on the part of the defendant, which the Court refused to give to the jury, together with the exceptions taken by the defendant to various rulings during the progress of the trial.

The evidence discloses that on the 3d of June, 1863, the defendant and some twelve or fifteen other persons repaired in vessels to the anchorage adjacent to the principal of the Farallone Islands, situated about thirty miles westward from the City of San Francisco, and there remained during the night of that day; that on the morning of the next day, between six and seven o'clock, a portion of this party attempted

to land upon the island, when they were met at the shore
by a guard armed with guns, who, by words, accompanied
by menacing acts, warned them not to land. Upon thus
being warned and threatened, the party so attempting to go
on shore returned to their companions upon the vessels at
anchor, where they were joined by all, or nearly all, the
defendant's party, and were furnished with loaded gun·, and
the party, thus reinforced and equipped, made another attempt
to land at a point upon the island a short distance from where
the guard on shore were. Upon nearing the land, the shore
party confronted them and again warned them off, but not-
withstanding they were thus warned, the defendant's party
continued to approach the island, for the purpose of landing
thereon, when the shore guard opened fire upon them, which
was immediately returned by a volley from the defendant's
party, who were together in a boat. The shore party fired
several shots after the first round, when the defendant's party
retreated. By the first fire from the men on shore several
persons were wounded, one of whom subsequently died, and
by the fire from the defendant's party one of the shore guard,
Edward Perkins, was killed.

The object which the defendant and his companions had in
visiting the Farallone Islands was to gather the eggs deposited
there in great abundance by wild sea fowls. Before the time
of the collision which resulted in the death of Perkins and
another, a number of persons known as the Farallone Egg
Company had been engaged in procuring the eggs deposited
by the wild sea birds upon this island and selling the same in
the San Francisco market; and the shore party, of whom Per-
kins was one, were in the employment of this egg company.
It appears from the testimony of some of the persons com-
posing the shore party that their chief business was to guard
the island for the benefit of the egg company, against the
ingress of any other persons who might desire to visit it for
the purpose of gathering eggs there. The egg company, it
seems, claimed the exclusive right of gathering wild birds'
eggs upon the island, as the prior occupants of it for that pur-

pose. The defendant refused to acknowledge any such right, or to yield to such claim, and in attempting to avail himself of what he deemed a right common to all citizens, he met with resistance from an armed force, who assumed to be acting in the defense of what they claimed as their employers' prior and paramount right. Upon the trial of the defendant the question as to the right of the respective parties to occupy the island for the object of procuring the eggs deposited there by sea fowls was in some degree involved, and the further question as to whether the defendant and his party were acting in the necessary defense of themselves, when the deceased, Perkins, was slain, was also a legitimate subject of inquiry.

When a person is accused of a criminal homicide, and in his defense undertakes to justify himself on the ground that the person slain was the agressor, and that his death was the result of force used in the necessary defense of the person of the accused, then the character of the conduct of the deceased, with the concomitant circumstances, as well as that of the accused, is a proper subject of investigation. While Courts and juries should be extremely cautious how they excuse the slayer of his fellow upon the pretext that the act was the result of a necessity, they should be equally careful not to find the accused guilty if it appears that the homicide was committed in the necessary defense of himself, or in the defense of those whom he is bound by natural law to protect and defend.

In charging the jury the Court left it to them to determine from the evidence whether the deceased and those acting with him were, at the time of the fatal rencounter, in the actual possession of the place where the defendant and his party attempted to land, and whether the defendant and his party had actual notice of such possession, and also whether he or they attempted at the time to forcibly enter and intrude into and upon such possession.

We have examined the evidence in the record with care and have not been able to find anything therein from which it could be inferred even, that the deceased and those engaged with him in resisting the landing of the defendant and his

party, or their employers were in the actual possession of the place at which the defendant's party attempted to land, or had the right to prevent any persons who desired to land upon the island from doing so, or from engaging, in a peaceable manner, in the lawful business of gathering the eggs deposited there by the wild birds of the ocean. Both on the part of the prosecution and defense it seems to have been conceded on the trial, that the island was a part of the public domain of the United States, and it is not pretended that the Farallone Egg Company, or their servants, the armed guard, of which the deceased was one, had reduced the island, or any portion of it, to actual and exclusive occupation for the uses and purposes of husbandry, residence, or commerce. We are not disposed to extend the doctrine which recognizes the actual possessor of land for the uses to which land is ordinarily employed, as its owner, to the casual and temporary occupant, whose use of it is subordinate to the pursuits of hunting and fishing, or the gathering of the eggs of birds whose resting places are upon the islands of the sea. It would be equally reasonable to recognize in the hunter who had first penetrated the mountain wild in quest of game, the exclusive right to it as his hunting ground, as it would to accord to the Farallone Egg Company the right to the exclusive possession of the Farallone Islands, or any one of them, for the business of gathering eggs left there by wild birds. The defendant and his party had the right to enter upon the island, provided the Government, in the legitimate exercise of its proprietary and sovereign authority, made no objection; and we cannot but regard the resistance made by the shore party, of which the unfortunate deceased was one, to the landing of the defendant and his companions, as unwarranted by any principle of right and justice. Hence the fact that others were on the island for the purpose of gathering the wild birds' eggs there, at the time defendant attempted to land, did not impair in any degree his right to. land and engage in the like business, nor justify such other persons in resisting the defendant's landing; and the Court

ought to have so charged the jury when requested on the part of the defendant.

The Court was requested, on behalf of the defendant, to give certain instructions to the jury, some of which were given and others refused. Of those refused was the following among others, which is in these words:

" The fact that the defendant and others were armed with guns at the time of landing on said island did not of itself render the landing unlawful or justify the deceased and others in resisting such landing or attacking them while so landing. Therefore, if the jury find from the evidence that defendant and others armed with guns, while landing on said island were attacked by deceased and others with deadly weapons, and their lives placed in immediate danger, and that the fatal shot was fired by one of the party with defendant, under such circumstances and in necessary self-defense, it is justifiable homicide, and the jury ought to acquit."

The evidence in the case did not show who fired the shot by which Perkins was killed, and the Court in its general charge to the jury instructed them that in order to convict the defendant it was not necessary that the evidence should show that the deceased was killed by a deadly weapon or gun discharged by the accused, but that it was enough if the evidence showed him to be an accessory to the unlawful killing; and in connection with this the Court clearly and accurately defined the character of an accessory. The requested instruction here set forth in *hæc verba* proceeded upon the hypothesis that the fatal shot was fired, not by the defendant himself, but by one of his party after being attacked by the deceased and those with him, and that the deceased was slain in necessary self-defense.

The act of bearing arms did not of itself affect the right of the defendant and his companions to land upon the island, nor justify the resistance and attack of the shore guard. The law justifies the individual who slays his adversary in his own necessary self-defense. The instruction as requested states as a postulate the true rule of law as applied to certain facts and circumstances assumed to have existed, and then declares fur-

ther that if the jury should find from the evidence that the lives of the defendant and his companions were placed in immediate peril by the attack of the guard on shore, armed as they were with deadly weapons, and that the homicide was committed in the necessary self-defense of the lives of those so attacked, then such defense was justifiable.

The defendant also requested the Court to charge the jury in the following words : " The fact that defendant and those with him on the occasion of the alleged homicide, were armed with guns at the time of landing on said island (if the jury should be satisfied of such fact from the evidence) does not render the act of landing illegal, nor justify the deceased and those on the island with him in resisting such landing, or in attacking them while landing.  Therefore, if the jury shall find from the evidence that defendant and those who were with him while attempting to land on the island on the occasion of the homicide, were attacked with deadly weapons and murderous intent by the deceased, and his life placed in immediate danger, he was not obliged to retreat, but might stand his ground, and, if need be, kill his assailant."

This requested instruction which was refused, as the one before considered, states as a basis a legal proposition exonerating the defendant and his party from the charge of an infraction of the law by the simple act of seeking to land on the island armed as they were, and at the same time involves the shore guard in the commission of a wrong in resisting such landing and in attacking the defendant and his party while attempting to land, and then proceeds to inform the jury if they should find that the defendant and his companions were attacked with deadly weapons and murderous intent by the deceased, by which the defendant's life was placed in instant peril, he was not obliged to retreat, but might at once act in his own defense, and if necessary slay his assailant.

Before the defendant had requested the Court to so charge the jury, they had been correctly instructed as to the law respecting justifiable homicide.  The Court had informed them that in order to make the killing of a human being jus-

tifiable it must be in necessary self-defense, or in defense of habitation, person or property, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against any person or persons who manifestly intend and endeavor in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of assaulting or offering personal violence to any person dwelling or being therein. And the Court had further instructed the jury that a bare fear of these enumerated offenses was not enough to justify the killing; but that it must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the party killing really acted under the influence of those fears, and not in a spirit of revenge; and also, that if one person kill another in self-defense it must appear that the danger was so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily harm, the killing of the other was absolutely necessary, and that it must appear also that the person killed was the assailant; or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given. (Act concerning crimes and punishments, Laws 1850, p. 232, Sections 29, 30, 31.)

The requested instruction last set forth comprehends the essential circumstances on which the right of self-defense, in the given instance, arose and depended, viz: defense of the person of the accused against the attack of the deceased, having at the time the means in hand, which he was using with murderous intent against the defendant. If the jury had been instructed to find as to these facts, and had found them to be true, and also that by means of the attack the life of the defendant was in immediate danger, or, in other words, that the danger was urgent and pressing, it would have appeared that these circumstances were sufficient to excite the fears of a reasonable person, and the jury, in such event, would have been bound to have inferred, as a sequence legitimately deducible from these constituent elements, the absolute necessity of the defense which resulted in the homicide committed.

As appears from the charge given by the Court to the jury, the law specifies with careful particularity the essential circumstances which must precede the existence of the right to take life in self-defense. Whether the facts and circumstances developed by the testimony constituted a case of necessary self-defense, was to be passed upon and determined by the jury from the evidence, considered in subordination to the law on the subject. It was their province and duty to ascertain from the evidence, and to determine as to the alleged necessity of the act which resulted in the death of Perkins; and it was the right of the defendant to have the question submitted to them in a distinct and palpable form to answer by their verdict, whether the homicide was committed by the defendant, or any one of his companions, in his or their necessary self-defense; and it was also his right, if they should find the issue in this particular in his favor, to have the Court instruct them that their verdict should be in justification of the accused.

Many other instructions were requested on the part of the defendant which the Court refused to give to the jury. These it is not necessary to notice in detail, as what we have said is sufficiently comprehensive to embrace the various propositions embodied in the proposed instructions.

The judgment is reversed and a new trial ordered.


SAWYER, J., dissenting.

I do not think the right of possession of the Farallone Island, or the right to gather the eggs deposited thereon by wild birds, was in question in this case. The right might have been to some extent in question had a party in possession been indicted for slaying one of a party seeking to enter with violence against his will. But men have no right to go with arms and enter with force, even upon their own land, against other parties already there, armed and violently, though wrongfully, resisting. In a contest arising under such circumstances both parties are in the wrong, and if it results in the loss of life, caused while the contest actually continues,

the slayer cannot shield himself upon the ground of self-defense without at least first showing some disposition to decline further conflict. The law furnishes peaceable remedies for injuries, and will not tolerate the pursuit of one's rights, even, in a manner liable to induce breaches of the peace and lead to homicide.

In this instance I think the Judge stated the law correctly, and submitted the case fully and fairly to the jury. The charge covered all the points necessary to enable the jury to consider the case intelligently and render a just verdict. I think there was no error in refusing the charges asked on the part of the defendant, and refused. I suppose it may be fairly assumed that the two instructions selected and commented on in the prevailing opinion as the grounds of reversal, are those least objectionable among the large number refused, and the ones which should have been given, if any. Yet, in my judgment, these instructions, without qualification, must necessarily have misled the jury. They wholly omit to bring to the notice of the jury the question as to whether the defendant's party prepared with arms to overcome resistance, were entering in a violent and hostile manner, knowing they would be resisted by men also armed for that purpose. The unlawful act of the shore party was not the only element to be considered, for the approaching party might also be seeking to enter in an unlawful manner, and the evidence tended strongly to show that they were. This element, as well as the unlawful act of the shore party, should also have been taken into account, as the foundation of the legal proposition with which the instruction asked terminates. It cannot be said, as a legal proposition, under the circumstances of the landing shown by the evidence, that "the fact that defendant, and those with him on the occasion of the alleged homicide, were armed with guns at the time of landing on said island, does not render the act of landing illegal." And the instruction must be considered in the light of the testimony to which it was to be applied. Thus considered, the jury would be in effect instructed that the defendant, up to the time of firing the fatal shot, was

pursuing a lawful right in a lawful manner. Yet the testimony shows that defendant's party went there with the knowledge that the party of the deceased were on the island, armed, for the purpose of resisting by force the landing of defendant and his associates; that defendant's party came prepared for a contest; that they first approached the island in a small boat without arms, and that, having been warned not to land by men in arms, and that their landing would be resisted, they returned to their vessel, increased the party to the number of fifteen or twenty, armed themselves with guns and returned prepared to overcome any resistance offered by those on shore; and that they advanced with loaded guns, protecting their persons while advancing by barricades, till after having been warned to stop without effect, a volley was discharged by the resisting party, which was immediately returned by the advancing party of defendant, and the deceased slain. The testimony as to which fired the first shot, before the volley fired by the respective parties, is conflicting. To say that such mode of landing is not, as a legal proposition, unlawful, is more than I am prepared to do; and yet such is the effect of the instructions asked and refused when considered in connection with the evidence to which they were to be applied. An advance of a party of fifteen or twenty men, with loaded guns, against another party, also armed, knowing that a deadly resistance to the advance will be made, is to court a conflict, and is of necessity a violent and forcible attempt to enter, and therefore unlawful. And it is none the less unlawful and wrongful, because the resistance is also unlawful. If to justify the homicide "it must appear," in the language of the statute, "that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow is given," he will certainly not be justified in inviting an attack in a violent manner, with arms in his hands, and upon the attack being made immediately slaying his opponent.

In other respects, also, the instructions are framed in such a manner as to make them liable to be misapprehended. The

Court, I think, was justified in refusing them. I am of the opinion, therefore, that the judgment should be affirmed.