BARTLETT DOE and JOHN S. DOE *v.* JOSÉ VAL-LEJO, SOLEDAD VALLEJO, his Wife, JONAS G. CLARK, JAMES SMITH, SIMON BACHMAN, and CHARLES KERN.

Judgment in Foreclosure fixing Boundaries of Land Mortgaged.—Where the description of the land mortgaged, as written in the mortgage, contains a latent ambiguity which renders it uncertain what are the boundaries of the prem-

ises mortgaged, the Court may, in an action to foreclose the mortgage, as between the mortgagee and mortgagor or his grantees, determine, and by its judgment fix the boundaries of the land upon which the lien has attached.

ORDER DENYING NEW TRIAL IN AN EQUITY CASE.—On an appeal from an order denying a new trial in an equity case, the appellate Court, under the system of practice in force in this State, will apply the same rule with reference to balancing conflicting testimony which it would if it had been an action at law.

DESCRIPTION OF LAND IN CONVEYANCE.— Although distances and quantity must yield to natural monuments in determining the boundaries of land, yet they are entitled to some weight in getting at the intention of the parties where there is a latent ambiguity as to what monument was intended.

INTEREST UPON INTEREST PAST DUE.—If by the terms of a promissory note the interest is due and payable at the end of every six months, the payee is not entitled under the statute of this State to interest upon interest if the instalments of interest are not paid as they fall due, unless there is an express provision in writing to pay such interest.

APPEAL from the District Court, Third Judicial District, Alameda County.

The Court below in giving judgment did not allow plaintiffs interest on the instalments of interest which were not paid when they fell due.

The plaintiffs appealed from the judgment and from an order denying a new trial.

The other facts are stated in the opinion of the Court.

*W. W. Crane, Jr.,* for Appellants, made the point that the Court should have granted appellants a decree following the terms of the mortgage, notwithstanding the answer and evidence of defendants, and argued that if the description was ambiguous, it was the misfortune of the mortgagees, and that the owner could not defeat their claim for a decree according to the precise terms of the mortgage, and that the purchaser at the decretal sale would buy at his peril, as to whether he obtained a large or small tract of land. In support of this he cited *Tryon* v. *Sutton*, 13 Cal. 490 ; and *San Francisco* v. *Lawton*, 21 Cal. 589. He also contended that the expression of quantity could not be taken into consideration in determining the boundaries of the premises, and cited *Stanley* v. *Green*, 12 Cal. 148 ; *Colton* v. *Seavey*, 22 Cal. 497 ; *Vance* v. *Fore*, 24 Cal. 436 ; and *Kimball* v. *Semple*, 25 Cal. 440.

*James C. Carey*, and *E. B. Mastick*, for Respondents, argued·
that the mortgage must be enforced according to the intention
of the parties, and that there being a latent ambiguity, the
Court must call in the aid of extrinsic facts to interpret the
language of its calls, and that if the latent ambiguity was not
removed a lien might be enforced on land which the parties
never intended to have covered by the mortgage, and cited
*Ramsdell* v. *Fuller*, 28 Cal. 37, and *San Francisco* v. *Lawton*,
21 Cal. 589.

By the Court, Sawyer, J.

This is an action to foreclose a mortgage upon a tract of
land constituting a part of " Rancho del Alameda." The
lands are described in the mortgage as commencing " at a
point on the Alameda Creek, and about three hundred yards
above the site of the old Vallejo mill, where a wire fence
meets said creek; thence down said creek, following the
meandering thereof, to a point where another wire fence meets
said creek, and about three quarters of a mile from the start-
ing point," etc., and ends, " embracing within said boundaries
the grist mill, mill race and water privileges, and twelve acres
of land, be the same more or less." The complaint follows
the description of the mortgage. At the time said mortgage
was executed, by starting at the point indicated as the point
of commencement, and following the meanders of the stream,
two wire fences would have been found on the same rancho—
the first about one half mile, and the second about one mile
and a quarter distant from the point of beginning. Regarding
the first wire fence as the one intended by the terms, " another
wire fence," and running the remaining lines, the lines so run
would include a tract of twenty-five acres; but, taking the
second as the fence intended, and running the remaining lines,
they would include about three hundred and forty acres.
After admitting in his answer the execution of the note and
mortgage, the defendant Clark (who, subsequent to the exe-
cution of said mortgage, had acquired the title to the entire

premises included within the outer lines, subject to the lien of the mortgage in question to the extent of the lands actually covered by it) sets up affirmatively the foregoing facts, and avers that in consequence of the existence of the two wire fences mentioned, either of which might answer the description, there is a latent ambiguity in the description; and that plaintiff claims that the second wire fence is the fence called for by the deed, when, in point of fact, the first wire fence is the true one, and prays that the Court may by its decree determine the first fence to be the fence called for and intended by the parties, and restrict the operation of the decree and sale to the smaller tract of land, and that the plaintiff, and those who may claim under him, may be restrained from hereafter setting up or asserting any claim or lien to that portion of the lands mentioned lying without the boundaries as indicated by the said first wire fence. The Court found the said first wire fence to be the one indicated by the calls of the mortgage, and limited the decree of foreclosure in accordance with such finding.

On the trial the plaintiffs introduced their testimony and rested. The defendant, Clark, then introduced his testimony and rested. At this point, before putting in their rebutting testimony, the plaintiffs moved for judgment on the pleadings, on the ground that no issue had been taken on the allegations of the complaint and no new matter constituting a defense set up. The Court denied the motion, and went on to determine the boundaries of the land covered by the mortgage, to which proceeding plaintiffs excepted; and this ruling constitutes the first ground of complaint.

*In action to foreclose mortgage the Court may determine the boundaries of the mortgaged property.*

It is true that the decree and the Sheriff's deed on a sale might have followed the description of the mortgage, and the parties might have properly litigated this question upon an action to recover the land. Or after a sale and conveyance thereunder, the party in possession of the disputed portion

might have brought his action to have the claim of the other party determined. But the defendant, Clark, was called in to defend, and he chose to present the question and have it determined at once, before a sale, and we do not see any good reason why it should not be determined in this suit as well as hereafter. That the conflicting claim exists is made to appear. It is simply a question of location—of applying the description in the mortgage to the land to be sold—of ascertaining the land upon which the lien has attached and which the decree directs to be sold. It is not necessary to determine adverse titles. Both parties claim from the same source. The Court is simply called upon to determine by its decree what land the plaintiff is entitled to have sold by the terms of his mortgage, where it is shown that a latent ambiguity exists. It does not appear to us that any of the decisions cited by appellants determine that this question cannot be tried in this action. While there does not appear to be any good reason for not settling the whole matter now, without leaving it open for further litigation, there are weighty reasons why the question should be determined before a sale. If the claim of the plaintiff is well founded, the tract covered by the mortgage is about three hundred and forty acres of land, worth, without the mill privilege and property, from thirty to fifty dollars per acre. If not well founded, it covers only about twenty-five acres of land. Whether the claim of plaintiff is well founded under the terms of the mortgage and condition of the land to which the description is applicable, is left in doubt. If the property should be put up for sale, under a decree following the exact terms of the mortgage, without first solving the doubt, no person will be able to bid intelligently, because he will not know whether he is bidding for twenty-five acres, or three hundred and forty acres of land; and the rights of the defendant, under such circumstances, cannot fail to be ruinously sacrificed. So, also, the plaintiff himself—unless the smaller tract is ample security for his demand—is liable to suffer. The interests of all parties manifestly require, in a case like this, that the land called for should, if possible, be ascer-

tained before the sale takes place; and we can see no sound objection to the course pursued.

*Rules of balancing conflicting evidence in law and equity.*

It is next claimed that the finding of the Court, to the effect that the first wire fence is the one indicated by the calls of the deed, is not supported by the evidence; and it is insisted that, this being an equity case, the Court will not apply the same rule with reference to balancing conflicting testimony which it would, if the appeal was from an order denying a new trial in an action at law; that the Court will determine the questions of fact upon an examination of all the evidence, as if they had never been determined in the Court below. We had supposed that this Court had so often declined to make any distinction in the practice between cases at law and cases in equity, that the question might be considered settled. Our system does not contemplate any distinction in this respect, and there is no propriety in making any under it. Under the old chancery practice the testimony was taken by deposition, generally before a Master or a Commissioner, and reduced to writing. When the testimony had all been filed, the case was argued upon it before the proper Court, and on appeal the entire evidence was before the Chancellor or appellate Court in the same form in which it was presented to the Court below. The appellate Court had the same means of determining the credibility of the witnesses as the Court below. But it is not so under our system. Now the witnesses are examined in open Court, and only brief minutes of the testimony taken, as in actions of law. The record is brought to this Court by a statement on motion for new trial in the same mode as in actions at law. The Court below is possessed of all those aids necessary to enable it to give due credit to every item of testimony, which are accessible to the Judge who tries an action at law, and which, from the nature of things, are inaccessible to this Court. For these reasons, if for no other, there would be no propriety in making a distinction in the

two classes of causes. But it is enough to say that the principles governing the practice are already settled. (*Gagliardo* v. *Hoberlin*, 18 Cal. 395; *Duff* v. *Fisher*, 15 Cal. 379; *Green* v. *Butler*, 26 Cal. 599; *Allen* v. *Fennon*, 27 Cal. 69, and cases cited) But were it otherwise, we should still be fully satisfied with the finding on this point. Indeed, we should have been much surprised, had it been the other way.

We are inclined to think the evidence admitted under plaintiffs' objection and exception admissible. But, whether it was or not, we do not see how the Court could have come to a different conclusion if it were thrown out of the case. As we view the testimony, the first wire fence much more completely harmonizes every course and distance with the calls of the description in the mortgage than the second. It is true that distances and quantity must yield to natural monuments, but they are entitled to some weight in getting at the intention of the parties, especially where they more nearly harmonize with one theory than the other. All of the distances and the quantity of land were arrived at by a very rough estimate. But a half mile down the meanders of the stream, though rather wide of the mark, is nearer to "about three quarters of a mile" than a mile and a quarter is. And when we come to the quantity, twelve acres is a wild guess, if we consider twenty-five acres to be the actual quantity; but what shall we say to it if the real quantity intended to be taken in was three hundred and forty acres? The quantity of "twelve acres, be the same more or less," must have been specified for some purpose. Adding the words "more or less," shows that there was only an intent to make a proximate estimate of the quantity. The parties evidently intended to state about what they supposed the quantity embraced within the specified boundaries would be. But it is inconceivable that they should have specified the quantity to be "twelve acres, more or less," if the boundaries which they intended to indicate really embraced three hundred and forty acres. Besides, the natural and obvious construction would be to take the first fence answering the calls of the deed which one would come

to in following the meanders of the stream. The first fence does answer the calls even better than the second. The evidence shows a third wire fence about a mile beyond the second. Why not claim to that? The Court, it seems to us, could have come to no other rational conclusion upon the evidence, even without the testimony admitted under exceptions.

### Interest on interest after it falls due.

The only remaining question is as to the interest. The note was for fifteen thousand dollars and interest at one and a half per cent per month; " said interest to be due and payable at the end of every six months." The interest was not paid as it fell due, and the plaintiff claims that he is entitled, under the first section of the statute relating to the subject, to interest on each instalment of interest from the time it fell due, by the terms of the contract, till paid, at the rate of ten per cent per annum. If section one contained the only provision upon the subject, there would be great force in the position taken by the appellant, and—although there is some conflict on the point—the authorities greatly preponderate in his favor. (1 Aik. 410 ; *Catlin* v. *Lyman*, 16 Vt. 46 ; *Austin* v. *Imus*, 23 Vt. 286 ; *Greenleaf* v. *Kellogg*, 2 Mass. 568 ; *Cooley* v. *Rose*, 3 Mass. 221 ; *Kennon* v. *Dickens*, 1 Taylor, 235 ; *Gibbes* v. *Chisholm*, 2 Nott & McCord, 38 ; *O'Neal* v. *Sims*, 1 Strob. 116 ; Id. 429 ; *Pierce* v. *Rowe*, 1 N. H. 179 ; *Talliaferro* v. *King*, 9 Dana, 331, and other cases pro and con ; 1 Am. Lead. Cases, 522.)

But the third section of the statute, authorizing parties to contract in writing for interest upon interest in default of punctual payment, also bears upon the question. And this section has already been construed by our predecessors to exclude interest after it falls due, unless expressly so agreed in writing. (*Montgomery* v. *Tutt*, 11 Cal. 316.) The question in that case was precisely similar in principle to the one now under consideration.

The judgment must be affirmed, and it is so ordered.