V. M. C. SILVA, Appellant, *v.* W. L. PICKARD et al., Respondents.

Res Adjudicata—Decisions of the Territorial Supreme Court.

1. This was a partnership settlement, tried before a referee, and taken to the supreme court of the late territory, where the question of the exclusion of certain testimony, and the sufficiency of the evidence, were passed upon. On a second trial the referee adhered to the decision of the territorial supreme

court which on this appeal the appellant contends is not binding, because that court was not a court of last resort, inasmuch as the case might have been taken to the supreme court of the United States, the amount involved being over $5,000. *Held,* that a decision of the supreme court of the Territory of Utah is *res adjudicata,* and that the principles and questions there adjudicated on an appeal are binding, and will not be reviewed as between the same parties and their privies on a subsequent appeal in the same case. The law so declared controls all further proceedings in the cause until the termination.

2. *Held,* also, that a finding of fact made upon conflicting evidence will not be disturbed if there is evidence to sustain it.

(No. 692. Decided Oct. 27, 1896.)

Appeal from the Third district court, Territory of Utah. Hon. S. A. Merritt, *Judge.*

Action by V. M. C. Silva against W. L. Pickard and H. Cohn & Co. for a partnership accounting. From the judgment, Silva and Pickard appeal.

*Sutherland* and *Murphy* and *Andrew Howat,* for appellants.

*Marshall & Royle* and *Dickson, Ellis & Ellis,* for respondents.

No briefs were filed in this case.

Ritchie, District Judge:

This suit is for a settlement of partnership accounts. In 1883, the plaintiff, as one partner, the defendant W. L. Pickard, as another, and the defendant H. Cohn & Co., as a third partner, constituted for a year the Territorial Wool Association. There was a renewal of that partnership afterwards, until and including 1887. The concern was so organized and continued for the business of buying wool in Utah, and selling it in Boston. Each year it

had a contract with the Massachusetts Loan & Trust Company. By their contract entered into in 1887, the Boston company were to pay the drafts of the wool association drawn for 12 cents a pound of wool shipped to the company. The drafts were to be accompanied with bills of lading of the shipments. The wool so shipped was security for the advance and certain expenses incident to the storage and care of the wool. The association had an agent in Boston to look after the wool, and secure buyers for it. The partners in Utah did not make joint purchases. Each bought and shipped in his own name to the Boston correspondent, and received the draft of the association for the advance of 12 cents a pound; the agent in Boston keeping the account of the partners between themselves, the account of their several shipments, and their drafts for advances. The business of the wool association in 1886 was not prosperous. The wool bought that year remained mostly on hand in 1887, and for that reason the accounts between the partners were not settled when the season opened in the latter year. The wool association continued to buy wool through the season of 1887. The business of that year was not profitable. The wools were not sold, and the accounts with the Massachusetts Loan & Trust Company closed until about February, 1889. At that time the wool association received as the net balance due it from the Boston correspondent, as the result of its wool business in 1886 and 1887, $27,804. That sum, and that alone, constituted the assets of the wool association to be divided. The company did not renew the partnership to do any new business after the close of 1887. After receiving a statement of their unsettled transactions, a dispute arose as to the rights of the several partners. Pending the efforts to settle, the money, by common consent, was placed, March 24, 1889, in the hands of F. Auerbach, for safe-keeping, at an

agreed interest of 6 per cent per annum. The testimony is conflicting as to what was the dispute between the partners, and, being unable to agree, at length, in 1892, this suit was begun. The plaintiff, in his complaint, alleges, and defendant Pickard, in his pleading, admits, that on the 4th day of May, 1887, the association, at a meeting then held, adopted a resolution that it would buy only a million pounds of wool during that year, and that each member should be limited to one-third of that amount. H. Cohn & Co., in their pleadings, denied the adoption of that resolution, or any agreed limitation, and alleged such consent to and acquiescence in the purchases that were made as should have the effect of a waiver of any objection. These are the important issues in the case. The second trial of this suit was had before Robert Harkness, as referee, and the report of the referee was confirmed by the court, and decree rendered accordingly, adverse to the claims of Silva and Pickard, who appealed. The errors relied upon for a reversal of the decree are: First, exclusion of the testimony of B. G. Raybould; second, insufficiency of the evidence to justify the fourth and sixth findings of fact made by the referee.

Discussing the first, we are met at the outset with the proposition from the respondents that, in excluding the evidence proffered of the witness Raybould, the referee simply followed the decision of the supreme court of the territory of Utah on a former appeal of this case (37 Pac. 86); that the question of its admissibility was then presented, and decided adversely to the view taken by the appellants. But it is contended on behalf of the latter that the territorial supreme court was not a court of last resort in this case, as, the amount involved being over $5,000, either party might have appealed to the supreme court of the United States, and therefore the decision of the territorial supreme court is not the law of the case;

and that on a second appeal that court might have corrected any error which then appeared to have been committed in the decision on a former appeal; and, by the same reasoning, that this court can now correct any such error.

The rule invoked upon behalf of the respondents is stated by Mr. Justice Field, now of the supreme court of the United States, speaking then for the supreme court of California, in the case of *Leese* v. *Clark*, 20 Cal. 417, in the following language: "A previous ruling of the appellate court upon a point distinctly made may be only authority in other cases, to be followed and affirmed, or to be modified and overruled, according to its intrinsic merits. But, in the case in which it is made, it is more than authority. It is a final adjudication, from the consequences of which the court cannot depart, nor the parties relieve themselves. Such has been the doctrine of this court for years, and, after repeated examinations and affirmations, it cannot be considered as open to further discussion. *Dewey* v. *Gray*, 2 Cal. 377; *Clary* v. *Hoaglund*, 6 Cal. 687; *Gunter* v. *Laffan*, 7 Cal. 592; and *Davison* v. *Dallas*, 15 Cal. 82. Nor is the doctrine peculiar to this court. It is the established doctrine of the supreme court of the United States, and of the supreme courts of several of the states. [Citing, among other cases, *Sibbald* v. *U. S.*, 12 Pet. 491; *Bridge Co.* v. *Stewart*, 3 How. 413.] And the reasoning of the doctrine is obvious. The supreme court has no appellate jurisdiction over its own judgments. It cannot review or modify them after the case has once passed, by the issuance of the remittitur, from its control." The rule is also stated as follows: "Where a decision is given by a court of ultimate appeal in a case, the decision must be regarded as conclusive in that particular case. * * * In the same case any ruling is final; in a different one it is only the precedent estab-

lished; and, while the courts are reluctant to disregard previous decisions in similar cases, there may be a variety of reasons which will cause them to do it. This general distinction exists, and must be recognized, no matter how palpable the error or unfortunate the circumstance. It is one over which the court itself has no control." 23 Am. & Eng. Enc. Law 33, citing many other cases. No doubt is raised but that such is the rule, but it is said to be inapplicable to this case. Is it applicable to the decision of an intermediate court of appeal, as well as to one of a court of ultimate appeal? An examination of the principles upon which the doctrine of the law of the case is found furnishes an answer to the inquiry. "Appellate courts have not, in general, the power to review their own decisions after the time for rehearing has expired. The exercise of such a power involves original jurisdiction, and appellate courts are limited to the review of the judgments of inferior tribunals. The doctrine of *res adjudicata*, and the principles upon which it rests, apply, therefore, to appellate judgments. The principles and questions adjudicated on an appeal are binding, and will not be reviewed as between the same parties and their privies on a subsequent appeal in the same cause. The law so declared controls all further proceedings in the cause until the termination." 2 Enc. Pl. & Prac. 373. "Appellate power is exercised over the proceedings of inferior courts, not on those of the appellate courts. The superior courts have no power to review their decisions, whether in a case at law or in equity. * * * No principle is better settled, or of more universal application, than that no court can reverse or annul its own final decrees or judgments for errors of fact or law, after the term in which they have been rendered, unless for clerical mistakes, * * * or to reinstate a cause dismissed by mistake, * * * from which it follows that no change

or modification can be made which may substantially
vary or affect it in any material thing. Bills of review in
cases of equity, and writs of error, *coram vobis* at law, are
exceptions." *Sibbald* v. *U. S.*, 12 Pet. 488. "* * * The
final judgment of the highest court upon a question of
law arising between the parties to an action on a given
state of facts establishes the rights of the parties to that
controversy, and is a final determination thereof, and,
like a final judgment in any other case, estops the parties
thereto from afterwards questioning its correctness. This
court has no appellate jurisdiction over its own judg-
ments, and such judgment, therefore, constitutes an
estoppel or record of the highest character, and is con-
clusive between the parties as to the matters adjudged."
*Klauber* v. *Car Co.*, 98 Cal. 107. So, on the other
hand, if, upon the construction of the contract sup-
posed, this court reverses the judgment of the court
below, and orders a new trial, the decision is equally con-
clusive as to the principles which shall govern on the new
trial. It is just as final to that extent as a judgment
directing a particular judgment to be entered is as to the
character of such judgment. The court cannot recall the
case, and reverse its decision, after the remittitur is issued.
It has determined the principles of law which shall gov-
ern, and, having thus determined, its jurisdiction in that
respect is gone. *Young* v. *Frost*, 1 Md. 394; *McClellan* v.
*Crook*, 7 Gill. 338; *Leese* v. *Clark*, 20 Cal. 417; Hayne, New
Trial & App. § 291.

This is the reasoning upon which the rule is based in
courts of last resort, both in Europe and America. 3
Dow, 157; *Himely* v. *Ross*, 5 Cranch, 313; *Bridge Co.* v.
*Stewart*, 3 How. 424-426; *Sibbald* v. *U. S.*, 12 Pet. 488; 22
Cent. Law J. 497, note, and 25 Cent. Law J. 297, note,
and many cases cited in the notes referred to; Elliott,
App. Proc. § 578. See, also, *Pledge* v. *Carr* [1895] 1 Ch.

51; *The Vera Cruz,* 9 Prob. Div. 96, 98. It has been adopted by this court. *Krantz* v. *Railway Co.,* 13 Utah 1; *Brine* v. *Jones,* 13 Utah 440.

The jurisdictions in which provision has been made for successive appeals, at each step to a higher tribunal, are not numerous. In England, before the judicature acts, writs of error from the superior common-law courts into the exchequer chamber, and thence into the house of lords, and appeals from the high court of chancery to the court of appeals in chancery, and thence into the house of lords, furnish examples of such procedure; and at the present time appeals lie from the various divisions of the high court of justice to the court of appeal, and thence to the house of lords. Since 1891 similar provisions have existed with reference to certain classes of cases in the appellate procedure in the federal courts. In New York, appeals may be taken from the special term of the supreme court to the general term, and thence to the court of appeals. In Illinois certain classes of cases may be reviewed, first, in the appellate court, and then in the supreme court. Recently, other states have adopted similar systems, but, in those named, they have existed many years. A careful search among the decisions in these jurisdictions reveals no support for the position taken by the appellant; but the rule seems to be that when an appellant ceases to pursue his appeal from one appellate court to a higher, though he might do so, the decision of the court where he sees fit to rest is a final one, within the meaning of the rule invoked by the respondents. *Metcalf* v. *Del Valle,* 66 Hun 627; 20 N. Y. Supp. 984; *In re Nelson,* 66 Hun 632; *Excelsior Brick Co.* v. *Village of Haverstraw,* 66 Hun 631; *Corn* v. *Rosenthal* (Com. Pl.), 22 N. Y. Supp. 700; *Morss* v. *Hawley,* 69 Hun 614; *Whitesides* v. *Cook,* 43 Ill. App.

183; *Ogle* v. *Turpin,* 8 Ill. App. 453-458; *Steele* v. *Thompson,* 38 Mo. App. 312. See, especially, *Lackland* v. *Smith,* 75 Mo. 307. The cases in this court already cited— *Krantz* v. *Railway Co.,* 13 Utah 1, and *Brim* v. *Jones,* 13 Utah 440—do not present the question in the precise form in which it apears in this case, but the reasoning therein leads to the same result. We are precluded by this doctrine from a re-examination of the question of the admissibility of the evidence offered.

The second ground upon which appellant prays for a reversal of the decree and order is the insufficiency of the evidence to justify the fourth and sixth findings of fact, which were to the effect that no agreement limiting the purchase was made, and, even if it had been made, that the subsequent conduct of the parties amounted to a waiver of the limitation. Again, we are met by a rule which bars an examination of the evidence in question. There being substantial conflict, this court cannot reverse the decree and order denying a new trial, upon the ground of the insufficiency of the evidence to justify the findings complained of. In cases where judgment has been rendered since January 4, 1896, the date when the state constitution went into effect, this question will have to be considered in the light of the provisions contained in section 9 of article 8 of the constitution, providing that "in equity cases the appeal may be taken on questions of both law and fact." But the constitutional provision has no application in this case. The controlling rule is stated by the supreme court of California: "Our system does not contemplate any distinction in this respect (between cases at law and in equity), and there is no propriety in making any under it. Under the old chancery practice, the testimony was taken by deposition, generally before a master or a commissioner, and reduced to writing. When the testimony had all been filed, the

case was argued upon it before the proper court; and, on appeal, the entire evidence was before the chancellor or appellate court, in the same form in which it was presented to the court below. The appellate court had the same means of determining the credibility of the witnesses as the court below. But it is not so under our system. Now, the witnesses are examined in open court, and only brief minutes of the testimony taken, as in actions of law. The record is brought to this court by a statement on motion for new trial in the same mode as in actions at law. The court below is possessed of all those aids necessary to enable it to give due credit to every item of testimony which is accessible to the judge who tries an action at law, and which, from the nature of things, is inaccessible to this court. For these reasons, if for no other, there would be no propriety in making a distinction in the two classes of cases. But it is enough to say that the principles governing the practice are already settled. *Gagliardo* v. *Hoberlin*, 18 Cal. 395; *Duff* v. *Fisher*, 15 Cal. 379; *Green* v. *Butler*, 26 Cal. 599; *Allen* v. *Fennon*, 27 Cal. 69 and cases cited." *Doe* v. *Vallejo*, 29 Cal. 390.

The judgment and order of the court below denying the motion for a new trial must be affirmed.

ROLAPP, District Judge, concurs.

BARTCH, J., concurs in the result.