# CORPORATION OF MEMBERS OF CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS v. WATSON.*

No. 1651. Decided January 13, 1906 (83 Pac. 731).

1. DEEDS—MENTAL CAPACITY.—The test of capacity to make a deed is whether the grantor at the time fully understood, realized, and appreciated the probable results and consequences of the transaction.[1]

2. CONTINUANCE—ABSENCE OF WITNESS — DILIGENCE.—Revised Statutes 1898, section 3133, requiring for a continuance, because of absence of evidence, showing that "due diligence has been used to procure it," is not satisfied where a subpoena for the absent witness was not placed in the hands of an officer for service till the morning the case was called for trial, though it had been set for several weeks, and the witness had testified on a former trial.

3. APPEAL—LAW OF THE CASE.—The rule of the law of the case does not require a deed held void on appeal to be so held on a second appeal; a different state of facts being presented.[2]

---

* Conclusiveness of prior decisions on subsequent appeals, see note, 34 L. R. A. 321.

[1] Chadd v. Moser, 25 Utah 369, 71 Pac. 870; Stringfellow v. Hanson, 25 Utah 480, 71 Pac. 1052.

[2] Venard v. Green, 4 Utah 458, 11 Pac. 337; Brim v. Jones, 13 Utah 440, 45 Pac. 46, 352; National Bank v. Lewis, 13 Utah 507, 45 Pac. 890; Silva v. Pickard, 14 Utah 245, 47 Pac. 144; Societe Des Mines d'Argent et Fonderies de Bingham v. Mackintosh, 7 Utah 35, 24 Pac. 669.

APPEAL from District Court, Third District; W. C. Hall, Judge.

Action by the Corporation of the members of the Church of Jesus Christ of Latter-Day Saints, residing in the Fifteenth Ecclesiastical Ward of Salt Lake Stake of Zion, against Helen Watson. Judgment for plaintiff. Defendant appeals.

AFFIRMED.

D. S. Truman for appellant.

F. S. Richards and J. T. Richards for respondent.

### APPELLANT'S POINTS.

The deed upon which plaintiff relied had been before this court before and had been declared void, under the evidence introduced on that trial.  (25 Utah 45.)   The plaintiff without further or additional evidence introduced the same deed on this trial.   Unless the plaintiff introduced some other evidence upon this trial to take it out of the ruling of this court, the same had become the law of the case for future trials and was conclusive on the lower court.  (Brim v. Jones, 13 Utah 440; Polack v. McGrath, 38 Cal. 66, 44 Cal. 489, 48 Cal. 540; Lee v. Stohl, 13 Colo. 174; 27 Ga. 334; 61 Ill. 286; 53 Ind. 365; 8 Md. 444; 62 N. E. 992; 41 Mo. App. 406; 60 Hun (N. Y.) 585; 32 Vt. 551; 27 N. W. 838; 20 Pac. Rep. 823.)   Cases directly and peculiarly in point here, we think, are:  Bank & Trust Co. v. Hartridge, 75 Ga. 149; Meyer v. Shamp, 20 Neb. 729; Bank v. Bobo, 13 Rich Law 47; Wright v. Water Co., 22 Nev. 304, In re Jacott, 53 Hun 634. Cannon says:  "He was weak, however, very weak."   Every element in this question was based on the evidence in the case. Dr. Nesbit answered, "My opinion is that he would be totally incompetent."    The answer was relevant and competent. (116 Cal. 179, 562; 20 Colo. 532; 23 Colo. 113; 18 Pac. 660; 15 Utah 534; 61 Am. St. Rep. 123; 83 N. Y. 359; 77 N. Y. 178.)

RESPONDENT'S POINTS.

The transcript was filed in this court . March 15, 1905. By stipulation, of counsel, the appellant was given until April 15, 1905, in which to file the abstract. The abstract was not filed until April 17, 1905. There was neither an order of court nor stipulation of counsel covering that date. The abstract should be stricken from the files, and the case dismissed. (*Emerick v. Ogden City*, 9 Utah 372; *Ellis v. Moon* (Wash.), 78. Pac. 677; *Hilts v. Hilts* (Ore.), 72 Pac. 697; *Robertson v. Shorow* (Wyo.), 69 Pac. 1; *Bank v. Renfrew* (Okla.), 66 Pac. 803; *Le Breton v. Swartzel* (Okla.), 78 Pac. 323; *Sheehan v. Ditch Co.* (Wyo.), 73 Pac. 964; *Butler v. McCornick* (Mont.), 71 Pac. 764.)

McCARTY, J.

This is an action by plaintiff in ejectment to recover possession of the North one-half of lot 4, in block 81, plat A, Salt Lake City survey and known as No. 21 South Fourth West street, in Salt Lake City, Utah. The defendant answered denying plaintiff's title, upon the ground that the deed under which it claimed title was executed by the grantor while mentally incapacitated, and that it was procured by undue influence. Upon the trial a decree was entered for the plaintiff. On appeal to this court the case was reversed. (25 Utah 45, 69.Pac. 531.) A retrial resulted in favor of plaintiff, which was reversed upon appeal to this court. (27 Utah 538, 76 Pac. 706.) The case was tried again, and is now on an appeal taken by defendant from a decree entered in favor of plaintiff.

The facts in the case are as follows: On August 4, 1886, George Chatfield died intestate, leaving surviving him as his only heir at law his wife, Martha S. Chatfield, to whom he was married about seven months prior to the time of his death. At the time of said marriage Chatfield was the owner and in possession of the property in controversy, and, with his wife, continued to reside upon it until his death, August 6, 1886. The defendant herein, who was the daughter of Mrs. Chatfield by her former husband, a Mr. Sandal, resided with

her mother on the premises in question until the latter's death in 1889, and has since continued to reside thereon. It is alleged in defendant's answer, and admitted in plaintiff's reply thereto: "That for a long time prior to his death Chatfield was a believer in the tenets and faith of the Church of Jesus Christ of Latter-Day Saints and a member of that denomination, . . . and that Martha S. Chatfield was an aged person, being about sixty years of age." For about five months before his death Chatfield had been in poor health, and for the greater part of the last three weeks prior to his death was confined to his bed. He had time and again, before his illness, expressed his intention of deeding the premises in question to the "Church," plaintiff herein, and the record shows that he had so expressed himself, prior to his marriage hereinbefore referred to, and, on the day before his death, made and executed a deed conveying the property to said church.

Defendant introduced some evidence which tended to show that for several weeks prior to the time the deed was executed Chatfield was very sick, and on the day of the transaction was much of the time in a stupor and unable to recognize those with whom he was surrounded and who were waiting upon him. The great preponderance of the evidence, however, shows that, notwithstanding he was weak and at times in great pain, he was perfectly rational and knew what he was doing when he signed the deed, and fully appreciated the effect and consequences of his act. George M. Cannon, before whom Chatfield signed and acknowledged the deed, testified in part as follows: "I read the deed to him in the presence of the other people who were there and explained exactly what the deed meant. . . . . I told him if he signed that deed it would convey the property to the grantee, and he stated he wished to sign it. . . . G. W. Price, an old gentleman who lived there neighbor to him, and also Mrs. Chatfield, the wife of the grantor—he requested those people to witness it. That was done. . . . I asked him if he acknowledged it of his

own free will and choice, and he stated that he did—that that was his purpose. . . I found him [referring to his mental condition] just as I had always found him, about the same as he had been during all my acquaintance with him. Q. Was that of sound mind? A. Yes, sir; that was of sound mind. . . . Q. What was his condition or talk with reference to being at all incoherent or unintelligible? A. His language was perfectly clear and lucid as I ever knew it to be." Other witnesses for plaintiff gave testimony which tended to corroborate the foregoing evidence of George M. Cannon. It is alleged in defendant's answer, and admitted by plaintiff in its reply, that subsequent to Chatfield's death, May 13, 1889, plaintiff signed and executed a lease to Mrs. Chatfield of the premises in question at the normal rental for the natural term of her life, and that plaintiff collected an annual rental of $1 per year from said Martha S. Chatfield for the years 1892 and 1893.

Among other things the court found: "That for about two weeks prior to his death, the said George Chatfield was weak in body, but his mind was not impaired, and at the time mentioned in defendant's answer (August 3, 1886) he was wholly competent to transact business, and at none of said times was wholly or at all incompetent by reason of disease, or mental weakness, or bodily infirmity, or otherwise to transact any business." On the question and issue of undue influence having been used to induce Chatfield to execute the deed mentioned, the court found: "That at the times alleged in the defendant's answer, the said George Chatfield was about sixty-seven years of age, that it does not appear from the evidence that said George Chatfield has been, for any time prior to his death, suffering from such a complication of diseases and mental weakness that he was easily induced, lead, or influenced by his religious beliefs or the acts of his spiritual adviser, Joseph Pollard, or any other person; but, at the time of the execution of said deed, the said George Chatfield was of sound mind, not acting under any undue influence, and the said deed was his voluntary act."

In her assignments of error appellant alleges that these

findings are not supported by, but are contrary to, the evidence. There is no evidence in the record, whatever, which shows or tends to show, or from which it can be inferred, that an ulterior influence of any kind was used to induce Chatfield to make the deed in question; but, on the contrary, there is evidence which shows affirmatively that he executed the instrument of his own free will and choice. And the evidence further shows that he had decided to deed this property to respondent long prior to the time of his marriage to defendant's mother. Not only is the record barren of facts tending to show undue influence, but there is also an entire failure of proof that Chatfield at the time he made the deed was incompetent to transact business. True, the evidence shows that he was enfeebled by old age and bodily infirmities, in fact was very sick, but it does not necessarily follow from this that he was mentally incapacitated from executing the deed. The test is, as declared by the great weight of authority, and as held by this court in the case of *Chadd v. Moser*, 25 Utah 369, 71 Pac. 870, and *Stringfellow v. Hanson*, 25 Utah 480, 71 Pac. 1052, did Chatfield, at the time, fully understand, realize, and appreciate the probable results and consequences of the transaction? For a more extended discussion of this question see authorities cited in those cases. We think the testimony hereinbefore set out, and other evidence referred to, affirmatively shows that Chatfield was of sound mind and knew and understood perfectly well what he was doing when he made the conveyance under consideration. This is in accordance with the opinion of this court on a former appeal of this case, wherein the facts found were substantially as here stated. (25 Utah 45, 69 Pac. 531.)

When the trial was nearly concluded in the lower court, defendant moved for a continuance supported by affidavit, in which it was alleged that one N. V. Jones was a material and necessary witness on behalf of defendant. The affidavit recites, so far as material here, that: "On October 1, 1904, defendant, by and through her attorney, D. S. Truman, caused a subpoena to be issued out of said court for the purpose of serving the same upon said N. V. Jones, but . . . by rea-

son of press of business and some oversight which was occasioned by the above-mentioned engagements and business (which it is unnecessary. here to enumerate) said attorney forgot to give said subpoena to the sheriff for service, but did give the same to him for service early Monday morning, October 3d (the day on which the case came on for trial). That said sheriff tried to serve the same upon said N. V. Jones, but found he had temporarily left the city and county for a short time." In addition to the facts set forth in the affidavit the attorney for appellant made the following explanation to the trial court why the subpoena was not served on the absent witness, which explanation he has incorporated into and made a part of the record on this appeal: "The only or the principal reason that he (Jones) wasn't served Saturday was that. I was in court all morning and put the subpoena in my pocket and forgot it for the time being to leave it at the office when I went up, and in the afternoon I was busy all the time until I went home to dinner after working hours." The court held that the affidavit and explanation made were not sufficient to entitle defendant to a continuance and denied the motion, to which ruling defendant excepted and now assigns the same as error.

The granting or refusing of a continuance is a matter largely within the discretion of the trial court, and, unless it is made to appear that the discretion has been abused, this court will not disturb the order granting or denying a continuance. (*Life Ins. Co. v. Gisborne*, 5 Utah 319, 15 Pac. 253; 1 Spelling, New Tr. App. Pra., 124.) In this case the showing made does not meet the requirements of section 3133, Revised Statutes Utah 1898, which provides that, in order to entitle a party to a continuance because of the absence of evidence, it must first be shown by affidavit that "due diligence has been used to procure it." The affidavit shows on its face that a subpoena for the absent witness was not placed in the hands of an officer for service until the morning the case was called for trial, notwithstanding the record shows the case was set for trial several weeks before it was called. It was known

to appellant and her counsel long before the case was called for trial what facts N. V. Jones would testify to, as the record shows he was a witness and testified in a former trial of this case to substantially the same facts setout in the affidavit, which it is unnecessary to reproduce here.   Therefore appellant and her counsel showed a lack of diligence which was wholly inexcusable.   The motion was properly denied.   (1 Spelling, New Tr. App. Pr., 137; 4 Enc. Pl. & Pr., 835; 9 Cyc. 109.)

Appellant insists that, the deed having in effect been declared void by a former decision rendered by this court in the same case (25 Utah 45, 69 Pac. 531), such decision became and is the law of the case, and that the trial court erred in not declaring the deed a nullity on the retrial of the case.   We recognized the rule to be as repeatedly declared by this court, and which is in harmony with the great weight of authority, viz.:   When a question or point of law in a case is determined by an appellate court, its decision will be followed and adhered to in all subsequent appeals in the same case.   (*Venard v. Green,* 4 Utah 458, 11 Pac. 337; *Brim v. Jones,* 13 Utah 440, 45 Pac. 46, 352; *National Bank v. Lewis,* 13 Utah 507, 45 Pac. 890; *Silva v. Pickard,* 14 Utah 245, 47 Pac. 144.) But this rule only obtains when the record on the second appeal presents the same, or substantially the same, matters of fact or questions of law upon which the first decision is founded.   For the doctrine is equally well established that, where other and different questions arise on a subsequent appeal or a different state of facts is presented, the former decision is not controlling. (3 Cyc. 399; 2 Enc. Pl. & Pr., 379; Spelling New Tr. App. Pr., 691; *Societe des Mines d'Argent et Fonderies de Bingham v. Mackintosh,* 7 Utah 35, 24 Pac. 669; note and brief, 34 L. R. A. 321, where numerous cases upholding this same doctrine are cited.)

Now, by an examination of the first decision rendered by this court in the case under consideration and the facts as presented by the record on that appeal, it will be seen that there was evidence before the court which tended to show that a part of the consideration for the conveyance was that Mrs.

Chatfield should have a life estate in the property, but, when the deed was drawn, because of some oversight or mistake, no such provision was inserted or reservation made therein. And it was because of this that the deed was declared to be void. The court, speaking through Justice Miner, said:

"The contract, being executed for the benefit of one party, should also have been executed for the benefit of the other party in conformity with the agreement."

The case was therefore remanded for a new trial. And on a second appeal (27 Utah 538, 76 Pac. 706), it was held that, a new trial having been granted without any restrictions or limitations, it was the duty of the trial court to retry the case on all the issues presented by the pleadings, which was done. At the last trial no evidence was introduced which in the remotest degree tended to show that there was any agreement or understanding of any kind between Chatfield and the representative of respondent, Bishop Pollard, that Mrs. Chatfield was to have a life estate in the property. Therefore the record on this appeal does not present the same facts as were before the court on the first appeal. In other words, the case was decided by the lower court at the last trial upon a different state of facts from those produced at the first trial. Under these circumstances the rule sought to be invoked does not apply to this case.

The judgment of the lower court is affirmed.

BARTCH, C. J., and STRAUP, J., concur.