## NELSON v. LOTT.

No. 5268.   Decided December 28, 1932.   (17 P. [2d] 272.)

*Kelly & Schiller,* of Salt Lake City, for appellant.

*Geo. P. Parker,* of Salt Lake City, and *Geo. S. Ballif,* of Provo, for respondent.

McKINNEY, District Judge.

This action is brought to recover damages for personal injuries sustained by plaintiff through the alleged negligent driving of defendant's automobile upon the plaintiff's left leg, breaking the same. Plaintiff had judgment, and defendant appeals. The acts of negligence relied upon by respondent were that appellant failed to keep a proper lookout, failed to observe the position of respondent, failed to keep his automobile under proper control, and that appellant further failed and neglected to sound the horn on his automobile, or to give any warning whatsoever on approaching respondent. Appellant denies respondent's allegations of

negligence and affirmatively alleges negligence on the part of respondent, in that respondent disregarded the warnings of the committee man in charge of traffic at the rodeo, and that he carelessly, and without observing the condition of the traffic upon the lane, stepped in the path of the automobile being driven by appellant, and that such act on the part of respondent was the sole proximate cause of the complained of injuries.

The evidence discloses that on August 14, 1930, a rodeo was being held at a farm a short distance west of the city of Lehi, and respondent went from Provo to Lehi for the purpose of attending the rodeo exhibition. The rodeo grounds were approximately 300 rods north of the main traveled highway, and, for the purpose of ingress and egress, a temporary lane had been constructed leading north from the main highway. In constructing the lane, a wire fence that inclosed a field to the north of the highway had been opened, and the entrance to the lane was by means of a dirt-covered culvert, making a temporary bridge over an irrigation ditch to the north of the highway. The culvert was about 18 feet in width, and the lane was approximately the same. A little north and west of the entrance from the highway, a small booth had been constructed for convenience in the sale and purchase of tickets to the rodeo. This booth was on high ground and approximately 3 feet west of the lane proper. On the day in question, respondent, accompanied by five boys, approached in an automobile on the main highway to a point about half a block east of the temporary lane, where the condition of the traffic caused him to stop the automobile. He alighted from the car and proceeded westerly to the ticket booth for the purpose of purchasing tickets for himself and party. There was considerable traffic moving on the highway westerly and northerly in the lane to the rodeo grounds. Upon reaching the booth, respondent purchased tickets, and, when he was about to buy his tickets, he saw appellant's car about a rod north of the booth, headed south and stopped. After buying his

tickets, he stepped around to the north side and noticed appellant's car was still standing there. When he moved away from the booth, he stepped to the northeast and looked south to see if he could see his car on the highway. He moved away from the booth some three or four feet, finally facing the southeast, with his money in one hand and his tickets in the other. While he was thus standing and was folding up greenbacks to put them in his overalls, appellant drove his car toward and upon him, striking his left leg, causing it to be pinned under the right front wheel, and fracturing it in three places. No horn was sounded or any other warning given before the impact.

Several witnesses for the defendant testified that plaintiff suddenly stepped in front of defendant's car, and that there was no time to sound a horn or otherwise warn plaintiff before the collision.

Appellant complains that the court's instructions Nos. 3, 4, and 8, are erroneous, prejudicial, misleading, and confusing; that they do not correctly state the law applicable to the case; and that the alleged duty, on the part of appellant, to sound his horn, and the other alleged acts of negligence, are greatly overemphasized. There seems to be an overemphasis by unnecessary repetition of the alleged duty of appellant, but we think a more serious objection than that is made to instruction No. 8. That instruction reads as follows:

"The court instructs the jury that if you find from a preponderance of the evidence in this case that the plaintiff, Nelson, was, at the time of his injury, standing in a lane near the ticket booth leading to the rodeo grounds and that the defendant Lott drove his automobile in the direction of the plaintiff and upon him, and in so doing failed and neglected to so operate and drive his said car so as to avoid striking the plaintiff, or failed and neglected to sound the horn of his automobile, or give any warning of the approach of his automobile and that no warning of the approach of said automobile was given plaintiff; and you further find from a preponderance of the evidence that such negligence as aforesaid, if any, was the direct and proximate cause of the injury suffered by the plaintiff; and you further believe from the evidence that the plaintiff exercised renasonable care

for his own safety and was not himself guilty of negligence contributing to his injury, then I instruct you that it would be your duty to return a verdict in favor of the plaintiff and against the defendant in this action."

The part of the foregoing instruction particularly criticized by appellant reads:

"Or failed and neglected to sound the horn of his automobile, or give any warning of the approach of his automobile, and that no warning of the approach of his automobile was given to the plaintiff."

It will be observed that the language is in the disjunctive. Appellant contends that the wording of the instruction is such that the jury might find that it was the absolute duty of appellant to sound his horn in any event, regardless of circumstances. We are constrained to agree with appellant's contention. The way the instruction is worded, the jury could find the defendant guilty of negligence, if they found he failed to sound his horn without regard to whether, under all the circumstances of the case, there was any necessity for such warning.

"Failure to give a warning signal does not constitute negligence when there is no apparent necessity for such warning and the obligation to give such signal is not imposed under the circumstances by statute." *Pixler* v. *Clemens*, 195 Iowa 529, 191 N. W. 375, 376.

The question is, Did due diligence, under the circumstances, require that a warning be given. If any duty devolved upon defendant to give warning of his approach by sounding his horn or otherwise, it was not a statutory, but a common-law, duty. Our statute specifies when an operator of an automobile shall sound his horn, and requires that every car shall be equipped with a suitable horn or signaling device for producing an abrupt sound as a signal or warning of danger. Of course, one of the reasons for requiring that automobiles be equipped with a horn is that it may be sounded as a signal of warning; but that can hardly be construed as requiring such horn to be sounded when there is no apparent necessity therefor.

In the case of *Carpenter* v. *McKissick*, 37 Idaho 729, 217 P. 1025, 1027, the court was requested to give an instruction in the following language:

"The driver is also required to give notice and warning of his approach by the sounding of a horn or the ringing of a bell or some other device sufficient to warn the pedestrian of his approach."

The Supreme Court of Idaho, in reviewing the case, said in part:

"The requested instruction went much further than this statute. In the absence of a statute, it would have been error for the court to have instructed, as requested, that it was the absolute duty of respondent to sound his horn when approaching the deceased. It was a question for the jury whether or not due diligence required that respondent do so."

The Idaho law requires the driver of an automobile to sound his horn when approaching a crossroad, intersecting highway, street, curve, or corner; while the Utah statute (Laws 1921, c. 83, p. 234, § 3978), requires such sounding only when approaching points on the highway if the view ahead is not clear, or where the view of an intersecting or connecting highway is obstructed, and it also provides that "in no case shall such horn or signalling device be used for the purpose of making an unnecessary noise." The purpose of the latter provision is apparent. The unnecessary sounding of horns or other signaling devices might actually increase, rather than diminish, the danger of accident. We think it was a question for the jury to determine whether or not, under all the circumstances of the case, ordinary care required appellant to give warning of his approach, and that the instruction is prejudicially erroneous.

Appellant assigns as error the court's instruction No. 7, contending that it trenches upon the prerogative of the jury, in that it assumes, notwithstanding a conflict in the evidence, that respondent was in a place of safety at the time of the injury, and that the burden of care was immediately placed upon the appellant. Instruction No. 7 reads:

"The court instructs the jury that the plaintiff, Nelson, was, at the time of the injury in this case, in a place where he had a right to be, and that there was a legal duty imposed upon defendant Lott to exercise ordinary and reasonable care in the operation of his automobile so as not to injure the plaintiff, and by ordinary and reasonable care is meant such care as an ordinary and prudent person would have used under the same or similar circumstances as shown by the evidence in this case."

One of the most strenuously contested points in the case was whether or not respondent was standing in the position he claims to have been in when the collision occurred or stepped suddenly into the position where he was injured at the moment of the impact. Neither of the parties were trespassers. They were invitees, and they had an equal right to be on the premises. But as to which of them had the right, or the prior or superior right, to be in the particular spot where the injury occurred at the time of its occurrence, we think, in view of the conflict in the evidence, was a question which the jury should have been privileged to determine. We think the instruction was probably calculated to mislead the jury, especially when considered in conjunction with instruction No. 8.

Appellant assigns as error the court's instruction No. 10, which reads:

"You are instructed that if you believe from the evidence that the injury to the plaintiff was the result of unavoidable accident and that the defendant's negligence was not the cause thereof, your verdict should be in favor of defendant, no cause of action."

Appellant contends that this instruction is contrary to law and misleading, in that it assumes that an unavoidable accident could be caused by defendant's negligence. The instruction would have been sufficient without the words "and that the defendant's negligence was not ■ the cause thereof." However, the writer is inclined to think the jury would interpret the instruction to mean that if they should believe the injury to the plaintiff was the

result of unavoidable accident and not of negligence on the part of defendant, their verdict should be in favor of the defendant. We think the word "thereof" refers to the word "injury" and not to the word "accident." While the instruction is open to criticism, we are of the opinion that it was not prejudicial.

The court's instruction No. 12 is objected to as not properly defining contributory negligence. It reads:

"You are instructed that contributory negligence is the doing of an act by the person complaining of injury, which a prudent man would not have done under similar circumstances, that contributed to the injury, and but for which act on the part of the person injured, such injury would not have occurred."

An instruction in the identical language of instruction No. 12 was given in the case of *Houston & T. C. Ry. Co.* v. *Moss* (Tex. Civ. App.) 63 S. W. 894, and the court upheld it. We also find the same language used in § 1351 (3d Ed.) Brickwood's Sackett on Instructions to Juries, in defining contributory negligence. Counsel cites the case of *Massachusetts Bonding & Ins. Co.* v. *Cudahy Packing Company*, 61 Utah 116, 211 P. 706; but we are unable to perceive the applicability of that case to the instant case. In that case the defendant contended that the injury complained of was caused by the negligence of a third person; not by the negligence of the defendant. There is no such contention here. In this case it is the contention of defendant that plaintiff stepped suddenly and without warning in front of the automobile driven by the defendant, and that such act on the part of plaintiff was the sole and proximate cause of the injury, without which the accident would not have occurred. While the instruction may not be in the most approved form, we think it wrought no prejudice to appellant.

Appellant complains of instruction No. 14, for the reason that the same assumes that the last chance doctrine is applicable. We are inclined to agree with counsel, but as the instruction is identical with defendant's request

No. 5, with the exception of the words "exercising due care and caution," appellant has no cause for complaint.

Complaint is also made of the court's instruction No. 15 which is in substantially the same language as defendant's request No. 6. If the words "and exercising ▉ ordinary care and caution" had been left out of the instruction, the part thereof to which appellant appears to object would be the same as his request No. 6. As the instruction was given substantially as requested, appellant has no cause for complaint.

Appellant assigns as error the refusal of the court to direct a verdict in favor of the defendant and to grant a new trial upon the insufficiency of the evidence to sustain the verdict. The question is: Was there any substantial evidence to submit to or to support the verdict of the ▉ jury. Neither respondent nor any of his witnesses saw the actual impact, but plaintiff's evidence shows that both before and after buying his tickets, and before stepping to the point of collision, he observed defendant's car standing motionless. Had the evidence shown that he did not look before he stepped, a more doubtful question would be presented. Appellant argues that if the inference of negligence on the part of appellant is tenable, it is overcome by the testimony of appellant and his witnesses; but, as counsel says, the court cannot weigh the evidence and resolve conflicts in it. Counsel for appellant discusses at some length the doctrine of res ipsa loquitur. As we view it that doctrine has no application to this case. Plaintiff alleges and relies upon specific acts of negligence. A very important fact shown by plaintiff's testimony is that both before and after buying his tickets, and before stepping from the booth, he looked and observed appellant's car standing motionless. The cases cited by appellant, while doubtless applicable to the facts in those cases, we think are not pertinent to the instant case. Here there is evidence to show that plaintiff did not fail to look, or, having looked, failed to see when he should have seen, when there was nothing to prevent his

seeing. On the contrary, there is evidence to show that he looked before he stepped and saw the car standing motionless as he had first observed it. We think, under the circumstances of the case, the court committed no error in refusing to direct a verdict or grant a new trial upon the insufficiency of the evidence.

Appellant complains that the court erred in permitting certain witnesses, over defendant's objection, to testify to alleged statements of defendant the day after the accident, that he did not run over Mr. Nelson's leg; that he saw the accident, but he did not know who did it; that he knew who was hit, but he did not know who hit him; that he was there and had seen the accident just after it happened; that he did not know who ran over plaintiff; that he did not see the man, but it was not he. Counsel contends that this testimony was incompetent, irrelevant, and immaterial, and highly prejudicial to appellant's case. We think the testimony was relevant and admissible, not upon the theory that the alleged statements or declarations were part of the res gestae, but as bearing upon and as indicative of the state of mind of the defendant with reference to the accident. It was a circumstance in the case which it was proper for the jury to consider in connection with other evidence. Of course, the defendant would be entitled to explain his statements.

"It has always been understood—the inference, indeed, is one of the simplest in human experience—that a party's falsehood * * * and all similar conduct, is receivable against him as an indication of his consciousness that his case is a weak or unfounded one, and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit. The inference thus does not apply itself necessarily to any specific fact in the cause, but operates indefinitely though strongly, against the whole mass of alleged facts constituting his cause." Wigmore on Evidence, Vol. 1, § 278, and cases cited.

"The conduct of a party to the cause may be of the highest importance in determining whether the cause of action in which he is plaintiff, or the ground of defense if he is the defendant, is honest and just,—just as it is evidence against a prisoner that he has said

one thing at one time and another at another, as showing that recourse to falsehoods leads fairly to the inference of guilt." *Moriarty* v. *R. Co.*, L. R. 5 Q. B. 319.

"It is relevant to prove the demeanor of a party accused of a crime or tort, his flight or concealment and his falsehoods." Jones Comm. on Evidence, Vol. 2, p. 1119, § 606.

In the case of *Rice* v. *Jefferson City Bridge & Transit Co.* (Mo. App.) 186 S. W. 568, 573, being a suit for damages for the alleged negligent killing of plaintiff's husband by one of defendant's electric cars, testimony was admitted tending to show that the deceased's death was purposely kept from his relatives and family, and that the true cause of his death was attempted to be concealed and attributed to something else. The court said:

"It is unquestioned that defendant did nothing to inform Rice's friends or family of his injury. * * * This conduct on the part of defendant was admissible as an admission that defendant was conscious of being in the wrong and that its cause was unjust."

For the reason that we are of the opinion that instructions Nos. 7 and 8 were calculated to mislead the jury and affect prejudicially the rights of appellant, the judgment of the court below is reversed, and the case remanded for a new trial. Costs to appellant.

STRAUP, ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

CHERRY, C. J., did not participate herein.