# HELPER STATE BANK v. CRUS.

No. 5974. Decided July 12, 1938. (81 Pac. 2d 359.)

322

*McCullough & Callister,* of Salt Lake City, for appellant.

*Chris Mathison,* of Salt Lake City, for respondent.

WADE, District Judge.

The Defendant, Annie Crus, brought this appeal. The case was here once before, on an appeal by the Plaintiff, Helper State Bank, and is reported in 90 Utah 207, 61 P. 2d 318.

The facts are substantially as follows: John Crus, having a savings account in the Bank and desiring his money to go to Annie Crus, his sister-in-law, upon his death, rather than to his daughter, discussed the matter with the cashier of the Bank, who thereupon endorsed on the Crus signature card, on the ledger sheet covering the account, and on the passbook, the following words: "In case of death, pay to Annie Crus of Salt Lake City, Utah, without recourse." Thereafter, two days prior to his death, the deceased called Annie Crus and the Cashier of the Bank to his bedside, and told them he desired her to get his money which was in the bank, amounting to $1,805. The cashier thereupon produced a signature card of the Bank, which Annie Crus signed in the presence of the cashier and John Crus. The card was retained by the cashier of the Bank and made a part of its files. The Bank passbook was not delivered to her during the lifetime of the deceased. After the death of John Crus, at the request of Annie Crus, the Bank paid the funeral expenses and some other claims, and thereafter delivered the balance of the account, in the sum of $1,534, to Annie Crus. Thereafter an administrator was appointed to administer the estate of John Crus, who brought suit

against the Bank and Annie Crus for this money. The Bank, by its pleadings, admitted its liability, and judgment was rendered against it for the above amount, which it paid, and suit was thereupon abandoned against Annie Crus.

Thereafter the Bank brought this action, alleging that it paid this money to the defendant, Annie Crus, solely upon her promise to divide the same among the nearest relatives of the deceased, and for no other consideration. This the defendant denies, and she alleges that the deceased gave her the money during his lifetime.

On the first trial the District Court denied the plaintiff's motion for a directed verdict, but instructed the jury that the evidence "is insufficent to show a valid gift of the money to the defendant during deceased's lifetime," and submitted the case to the jury solely upon the question whether or not when the defendant received the money she promised to divide the same among the nearest relatives, as alleged. The jury returned a verdict in favor of the defendant. Plaintiff appealed, and this court held that, there being no evidence of a gift of this money to the defendant during the lifetime of the deceased, it could make no difference whether she promised to divide this money among the nearest relatives, or not, and that in either event she received the money under such circumstances as in equity and good conscience would require her to return it to the Bank, and therefore the trial court should have directed a verdict in favor of the plaintiff. The case was remanded to the District Court for a new trial.

On the new trial the pleadings were the same, and the evidence was substantially the same as on the former hearing, and the trial court directed a verdict in favor of the plaintiff—and the defendant brings this appeal. She contends that, the trial court on the first trial having taken from the jury the question of whether or not there was a gift of this money to the defendant by the deceased before his death and the defendant not having appealed from this ruling, that question was not before the court on the former

hearing and therefore could not have been decided. She further argues that the doctrine of the "law of the case" in most courts does not have the effect of res judicata, even though the same issues were involved, but that it is only a rule of convenience, and that it is the duty of the court to correct errors on second appeal, especially where the matter was not well considered, and for those reasons this court should now determine whether or not there was sufficient evidence to go to the jury on the question of whether the deceased gave this money to the defendant during his lifetime.

It is a well-established rule in this jurisdiction, as well as in a majority of other jurisdictions, that where the questions of law and fact are the same the decision of the first appeal, whether right or wrong, becomes the law of the case on second appeal and is binding as well on the parties to the action, the trial court, and the appellate court. ∎ To this effect was *Venard* v. *Green,* 4 Utah 456, 11 P. 337; *Societe des Mines* v. *Mackintosh,* 7 Utah 35, 24 P. 669; *Krantz* v. *Rio Grande Ry. Co.,* 13 Utah 1, 43 P. 623, 32 L. R. A. 828; *Brim* v. *Jones,* 13 Utah 440, 45 P. 46, 352; *Silva* v. *Pickard,* 14 Utah 245, 47 P. 144; *People's B. & L. Ass'n* v. *Fowble,* 18 Utah 206, 55 P. 57; *Potter* v. *Ajax Mining Co.,* 22 Utah 273, 61 P. 999; *Herriman Irrigation Co.* v. *Keel,* 25 Utah 96, 69 P. 719; *State* v. *Mortensen,* 27 Utah 16, 74 P. 120, 350; *Corporation of Members of L. D. S.* v. *Watson,* 30 Utah 126, 83 P. 731; *Teakle* v. *San Pedro Railroad Co.,* 36 Utah 29, 102 P. 635, 639; *Grand Central Mining Co.* v. *Mammoth M. Co.,* 36 Utah 364, 104 P. 573, Ann. Cas. 1912A, 254; *Grow* v. *Oregon S. L. Ry. Co.,* 47 Utah 26, 150 P. 970; *Chadwick* v. *Beneficial Life Ins. Co.,* 56 Utah 480, 191 P. 240; *Thompson* v. *Reynolds,* 59 Utah 416, 204 P. 516; *Huntsman* v. *Huntsman,* 61 Utah 376, 213 P. 179; *Forbes* v. *Butler,* 73 Utah 522, 275 P. 772; *Utah State Nat. Bank* v. *Livingston,* 74 Utah 456, 280 P. 327; *Sessions* v. *Dee Memorial Hospital Ass'n,* 94 Utah 460, 78 P. 2d 645.

But the real question to be determined, as far as the "law of the case" doctrine is concerned, is: Did this court, in making its former decision, have before it the question of whether or not there was a gift of this money to Annie Crus during the lifetime of the deceased, so that its former decision is now the "law of the case" and res judicata and this court is now bound by that decision and cannot examine into that question? That the court was of the opinion that there was not sufficient evidence of such a gift to be submitted to the jury is clear from the following excerpt from that opinion:

"The bank passbook was not delivered to the defendant during the lifetime of the deceased, nor was there any other evidence of transfer of title prior to the death of John Crus.

"If there was no gift, as the lower court properly concluded * * * then it is clear that the defendant had money belonging to the plaintiff which in justice and good conscience she should return. It seems almost unnecessary to say that the attempted testamentary disposition of the funds would not give the defendant title to them."

But, was there any issue on that question before the court at the time of making that decision? The trial court had taken that question from the jury, on the ground that the evidence was insufficient to show a valid gift of this money to the defendant during the lifetime of the deceased. The plaintiff, who was the appellant on the former appeal, did not complain of nor appeal from that ruling and did not assign that ruling as error, the ruling being in its favor, and it, being satisfied with that ruling, could not assign it as error; but, on the other hand, it devoted some of its brief to arguing that the ruling was correct. The defendant, while not satisfied with the ruling, did not appeal therefrom, presumably for the reason that she had obtained a judgment in the lower court for just what she asked and was satisfied with the judgment, and did not take a counter or cross appeal. And she made no argument whatever on this question.

This court, in *Herriman Irrigation Company* v. ■
*Keel,* 25 Utah 96, 69 P. 719, said that (page 721):

"On appeal, all questions to be determined must be raised by assignments of error, and in the appellate court only questions so raised can be presented and determined. * * * Before the appellate court can review the action of the trial court to determine a question such question must be raised by an assignment of error. * * * It is a general rule of practice in this court that all errors assigned, but not insisted upon in the appellant's brief, will be disregarded, and considered as waived and as raising no question for determination. Only such questions, therefore, * * * as are raised by assignment of error, and presented in the appellant's brief, are before the supreme court for determination."

Under the rule above laid down, clearly that question was not before this court.

Again, in the case of *Silva* v. *Pickard,* 14 Utah 245, 47 P. 144, quoting from an opinion by Mr. Justice Field, later of the Supreme Court of the United States, in the case of *Leese* v. *Clark,* 20 Cal. 387, 417, is the following (page 145):

"A previous ruling of the appellate court upon a point *distinctly made* may be only authority in other cases, to be followed and affirmed, or to be modified and overruled, according to its intrinsic merits. But, in the case in which it is made, it is more than authority. It is a final adjudication, from the consequences of which the court cannot depart, nor the parties relieve themselves."

We have italicized the words "distinctly made," calling attention to the fact that it is only such points as are distinctly made that bind the court on a second appeal.
It has also been held, many times, that the doctrine ■■
of the "law of the case" does not apply to expressions of opinion on questions the determination of which was not necessary for the decision, nor to the reasonings or illustrations in an opinion. Thus, it is said, in *Herriman Irrigation Co.* v. *Keel,* above cited, speaking of the "law of the case":

"It does not apply to expressions of opinions on questions the disposition of which was not necessary for the decision, or to reasoning or

illustrations in an opinion. * * * Nothing in a decision which is merely obiter dictum is controlled by the rule. * * * But upon all questions involved in the judgment the decision of the appellate court is conclusive."

Further on in the same case the court quoted from *Barney* v. *Winona Railroad Co.*, 117 U. S. 228, 6 S. Ct. 654, 29 L. Ed. 858—Mr. Justice Field delivering the opinion, as follows:

"We said, however, that the grant of these additional sections might be regarded as one of quantity,—an inadvertence for which the writer of that opinion, who is also the writer of this one, is alone responsible. The statement was not at all material to the decision, which was that a deduction should have been made by reason of the intersection of the two grants, so far as the prior grant was located within the extension. We recognize the rule that what was decided in a case pending before us on appeal is not open to reconsideration in the same case, on a second appeal upon similar facts. The first decision is the law of the case, and must control its disposition; but the rule does not apply to expressions of opinion on matters the disposition of which was not required for the decision."

And in *Potter* v. *Ajax Mining Co.*, 22 Utah 273, 61 P. 999, this court said (page 1000) :

" * * * But this rule does not apply to the argument, or to expressions or illustrations in the argument that are obiter, and not pertinent nor required for a disposition of the particular question arising and decided in the case. The reasoning and illustrations do not constitute the decision."

To the same effect are *Corporation of Members of L. D. S.* v. *Watson*, 30 Utah 126, 83 P. 731, *Grand Central Min. Co.* v. *Mammoth Min. Co.*, 36 Utah 364, 104 P. 573, Ann. Cas. 1912A, 254, and *Sessions* v. *Dee Memorial Hospital*, supra, and as reflected by practically all of the cases cited earlier in this opinion. In most of those cases there ■ was an additional question of fact; that is, there were new facts developed on the second trial, and this court has invariably proceeded to determine any new question which

has developed in respect to those facts, on the second appeal. But in the present case there is no substantial difference in the facts developed on the two trials, and the question now argued by the appellant on this appeal was decided by the trial court in the first trial adversely to the appellant. But the jury brought in a verdict in favor of the appellant on this appeal, on other questions. And this court reversed the decision of the trial court, and remanded the case for a new trial generally. The question now before this court was not made an issue on the former appeal, although it might have been made one by cross-appeal. This court, in its former opinion, indicated that it considered that this question had been properly taken from the jury on the first trial. The determination of that question was not necessary for that decision, because, in addition to the reasons above discussed, the same result would have been reached had this court been of the opinion that the trial court had erred in taking this question from the jury, namely, a new trial granted. This question not being before the court on the former appeal, and the determination thereof not being necessary for its decision, the comment of the court on this question in that decision is not binding on this court now, and the question will be determined on its merits.

There are, however, some other cases which appear on first thought to be contrary to the views above expressed and require consideration. In the case of *Krantz* v. *Rio Grande Ry. Co.,* 13 Utah 1, 43 P. 623, 32 L. R. A. 828, this court said (page 624) :

"This appeal * * * is now being considered, on motion to dismiss, on the ground that it is substantially a second appeal on the same state of facts. * * *

"Counsel for the appellant contend that this appeal is proper because the former one was simply from an order granting a new trial, * * * that, after the original judgment was reinstated, it was subject to appeal, to present questions which could not be raised on the appeal from the order granting a new trial; and that the defendant had no previous opportunity to appeal from the judgment. We think the position assumed by the appellant is not well taken. It had an

opportunity to appeal from the judgment in the first instance, and all the matters of which it now complains could have been reviewed. Instead of that, it moved for a new trial, which was granted, and then the respondent herein appealed. That appeal brought up the entire record for examination. * * * If the appellant herein seriously doubted the sufficiency of the complaint, it could have been tested, and all the points now insisted upon could have been considered, by an appeal from the judgment, instead of a motion for a new trial. The attempt now to present them for review, on appeal from the judgment which was rendered in pursuance of the mandate of the appellate court, must fail, because it is, in effect, an appeal from our own judgment. * * * On the former appeal, this court said: 'We are of the opinion * * * that the appellant is entitled to recover, * * * and do not find it necessary, to put him to the expense and trouble of a new trial. * * * Original judgment upon the verdict reinstated * * *."

From a reading of this case, it seems to hold that on second appeal the court will not consider any question which the appellant might have raised by an appeal from the original judgment, instead of a motion for a new trial, even though such question was not raised nor decided on the first appeal; but in the Krantz Case this court did not direct a new trial, but directed the District Court to reinstate a judgment which it had set aside in order to grant the motion for a new trial. Thus, this decision simply holds that where, in a former decision, the appellate court has directed just what judgment shall be entered, without granting a new trial, on an appeal from a judgment entered by the trial court the only question that will be considered is whether such judgment was in accordance with the mandate of the appellate court in its former decision, and, if so, the court will not consider any new question, even though such question was not raised or determined on the former decision. See *Venard* v. *Green,* 4 Utah 456, 11 P. 337; *People's B. & L. Ass'n* v. *Fowble,* 18 Utah 206, 55 P. 57; and *Huntsman* v. *Huntsman,* 61 Utah 376, 213 P. 179. A distinction is noted in the case of *Corporation of Members of L. D. S.* v. *Watson,* supra, where the court said (page 734) :

"A new trial having been granted without any restrictions or limitations, it was the duty of the trial court to retry the case on all the issues presented by the pleadings."

The reason for this difference is that where an appellate court disposes of the entire case by directing just what judgment shall be entered, then the case is finally disposed of, and no new issues can be raised, and the only thing that can be determined on another appeal is whether the trial court has followed those directions. And under those conditions, if any party has failed to take an appeal or failed to raise any issue which it might have raised, it is too late, because the appellate court has finally disposed of the case. But where the case is remanded for a new trial, without any limitations or restrictions, then the case has not been finally determined, except insofar as the former decision has decided questions that are distinctly raised and are necessarily decided by the court in the former appeal.

If there was any substantial evidence from which the jury could find that John Crus gave this money to the defendant, Annie Crus, during his lifetime then the court erred in directing a verdict for the plaintiff. In *Papanikolas* v. *Sampson,* 73 Utah 404, 274 P. 856, this court said (page 863) :

"If there was any substantial evidence upon which the jury could find for the plaintiffs under the pleadings, the court erred in directing the verdict."

And in *Robinson* v. *Salt Lake City,* 37 Utah 520, 109 P. 817, the court said (page 820) :

"The test is whether or not there is some substantial evidence in support of every essential fact which a plaintiff is required to prove in order to entitle him to recover. If the evidence and the inferences are of the character which would authorize reasonable men to arrive at different conclusions with respect to whether all essential facts were or were not proven, then the question is one of fact and not of law."

And in *Green* v. *Higbee,* 66 Utah 539, 244 P. 906, the court said (page 908) :

"A verdict should not be directed for defendant, unless all reasonable men would draw the same conclusion from the evidence, and that conclusion would require a verdict for the defendant." To the same effect, see *Nelson* v. *Lott*, 81 Utah 265, 17 P. 2d 272.

Referring now to the defendant's evidence on this question, we find: That sometime prior to his death John Crus told the cashier of the Bank that upon his death he wanted Annie Crus to have his money which was deposited in the Bank, and the cashier thereupon wrote upon the signature card, the ledger sheet, and the passbook for this account the following words: "In case of death pay to Annie Crus, of Salt Lake City, Utah, without recourse," and she testified that thereafter, and just two days before John Crus died, he sent for her and she went to Helper to see him. That upon her arrival at his bedside he sent for Mr. Vignetto, the cashier of the Bank, and with only those three in the room John Crus said he wanted Annie Crus to get his money which he had in the bank. Mr. Vignetto said: "That is all right; he has told me that before." And thereupon Vignetto produced one of the Bank signature cards and had her sign it. He testified that he took the card and had it filed as a part of the files of the Bank. The card, as far as is material to the case, is as follows:

"INDIVIDUAL
"John Crus Account

IS HEREBY AUTHORIZED TO RECOGNIZE ONLY THE SIGNATURE BELOW IN THE PAYMENT OF FUNDS OR THE TRANSACTION OF ANY OTHER BUSINESS FOR MY ACCOUNT.

Sign here (Annie Crus)

Will divide among nearest relatives"

The words "John Crus Account," the signature, "Annie Crus," and the last sentence, "Will divide among nearest Relatives," are all written in longhand, and, except the signature, are in the handwriting of the cashier. The rest is printed.

Mrs. Crus testified that the signature is hers and was signed as above stated, in the presence of John Crus, and the cashier of the Bank, and that at the time she signed it the words "Will divide among nearest Relatives" were not on the card, and that they were put there without her knowledge or consent; that she never told any one she would divide it among the nearest relatives—and the evidence is undisputed that John Crus never requested her to so divide the money. She further testified that John Crus did not say during that conversation that he wanted to retain control of the money until he died, nor did he say upon his death he wanted her to have the money, but he did say that he wanted her to take the money right then.

The foregoing constitutes the evidence on which the defendant relies to show that there was a gift to her by the deceased, John Crus, of his savings deposit account in the Bank during his lifetime. The only conflict in the testimony as to any part essential to her claim, is that the cashier of the Bank testified that in the conversation at the bedside of the deceased, between Annie Crus and John Crus and the cashier, the deceased stated that he wanted to give this money to Annie Crus after his death, whereas, Annie Crus states that the deceased said that he wanted her to have it then.

In the case of *Holman* v. *Savings Bank,* 41 Utah 340, 124 P. 765, the court defines the elements of a gift by quoting with approval from the case of *Liebe* v. *Battmann,* 33 Or. 241, 54 P. 179, 662, 72 Am. St. Rep. 705, as follows:

" 'Gifts inter vivos have no reference to the future, and go into immediate and absolute effect. To constitute such a gift, the donor must be divested of, and the donee invested with, the right of property in the subject of the gift. It must be absolute, irrevocable, without any reference to its taking place at some future period. The donor must deliver the property, and part with all present and future dominion over it.' " (Page 766.)

Thus, before there could be a gift of this savings deposit account from John Crus to Annie Crus he must have intended that some title, either legal or equitable, should pass to her during his lifetime, and in addition to merely having such intention, he must have performed some act or acts which indicated his intention to pass such title to her during his lifetime. See *Christensen* v. *Ogden State Bank,* 75 Utah 478, 286 P. 638; *Reed* v. *Knudson,* 80 Utah 428, 15 P. 2d 347; *Wood* v. *Wood,* 87 Utah 394, 49 P. 2d 416; *Boyle* v. *Dinsdale,* 45 Utah 112, 143 P. 136, Ann. Cas. 1917E, 363; and *Olson* v. *Scott,* 61 Utah 42, 210 P. 987.

In the case of *Holman* v. *Savings Bank,* above quoted from, the court held that the mere fact that the money in question was deposited by the owner in the joint names of two persons in the bank, so that either could withdraw it during the lifetime of both or upon the death of either, by presenting the passbook, although some evidence of a gift, yet, standing alone, was insufficient to establish either a gift or joint ownership of said bank account. The court further held that the intention of the alleged donor is a question of fact, which the trial court found against the party claiming a gift, and that there was clearly substantial evidence to sustain that finding. In that case the passbook was in the possession of the person claiming the account as a gift, but the court held that she had failed to show that the owner intended to make a gift to her. The court also held that in such a case the evidence must be clear and convincing that a gift was intended, in order to establish a gift, especially where it was claimed by a stranger to the donor.

On the other hand, in the case of *Boyle* v. *Dinsdale,* heretofore cited, the owner of a bank deposit, who was an elderly woman, called on the cashier of the bank, in company with her son and daughter, and told him that she wanted to fix it so that upon her death the said son and daughter could have the deposit, but that she desired during her lifetime to draw the accumulated interest thereon. The court held

that this evidence, together with other evidence which was introduced in the case, clearly indicated that the owner of the deposit intended to make a present gift of the principal of the bank account, and in discussing this question the court said (page 140) :

" * * * it was the manifest purpose and intention of the deceased to place the money in question in a special deposit for the use and benefit of the two respondents. That what she did and said at the time the deposit was made constituted a gift of the money to the two children named and a delivery thereof to the bank as trustee to be held by it for their use and benefit during the life of the mother, with the right on her part of having the use and benefit of the accruing interest until her death, after which the money was to be paid to them. The transaction in law, therefore, constituted a gift in praesenti of the principal, with the right of the donor to draw the accruing interest during life. * * *

"Nor is the fact important that the passbook was apparently in the possession of the deceased at the time of her death. Where a deposit is claimed as a gift, a delivery of the passbook is ordinarily held necessary as evidence of the delivery of the subject-matter of the gift. That is, the delivery of the passbook constitutes a symbolical delivery of the money on deposit. Such, however, is not the case where, as here, the money is delivered to a trustee in trust for the beneficiary. The delivery in such a case is actual, not symbolic. A delivery to a trustee is, in legal effect, the same as a delivery to the donee. * * * As pointed out by the courts, each case in which a gift is involved must, to a large extent, be controlled by its own peculiar facts and circumstances. While it is true that certain forms of law must be complied with, yet it is also true that the intention of the donor must also receive due consideration and effect, and if in making a gift he has substantially complied with the latter, and it is clear that he intended to make a gift, his intentions must prevail."

The case of *Christensen* v. *Ogden State Bank,* 75 Utah 478, 286 P. 638, was quite similar to the case of *Holman* v. *Savings Bank,* supra. The court in the Christensen Case held that the facts there presented were not sufficient to show a gift, although the trial court had held that a gift had taken place. The court, in discussing this question, said (page 643) :

" * * * plaintiff must succeed, if at all, upon the theory that Jens Christensen parted with the legal or equitable title to the account during his lifetime.

" * * * Thus, before any right to a savings deposit account can be said to pass from a donor to a donee, there must be a donative intention. The donor must intend that either the legal or the equitable title to the fund shall pass to the donee. The intention must be that some title to the account shall pass during the life of the donor, otherwise the gift must fail unless the requirements of the law as to testamentary disposition of property have been complied with. It is also uniformly held that a mere intention to make a gift to take effect during the life of the donor is not sufficient to pass any title either legal or equitable. There must be some act performed by the donor which indicates his intention to vest in the donee some right to the property during the life of the donor. * * *

"It is an elementary rule of law that in gifts inter vivos as well as gifts causa mortis the title to the thing given must pass from the donor to the donee. In contemplation of law there can be no executory gift. Whether a given transaction be called a gift or a voluntary trust, there must be a passing of some title from the donor to the donee. In the case of a gift proper, the legal as well as the equitable title passes from the donor to the donee. In the case of a voluntary trust the equitable title must pass to the cestui que trust, while the legal title is transferred to a third person or is retained by the person creating the trust to hold for the purpose of the trust. At common law in a case of a gift inter vivos or of a gift causa mortis of personal property capable of manual delivery, an actual delivery of the property is necessary to consummate the gift. The rule is founded upon public policy and is calculated to defeat fraudulent claims against the estates of deceased persons. The rule has been relaxed as to personal property not capable of manual delivery. In such case a symbolic delivery is held sufficient to constitute an enforecable gift. In all cases, however, before a claimant is entitled to prevail in his claim that a deceased person has made a gift of property to such claimant, the proof that the deceased person intended that some title to the thing claimed should pass to the claimant during the life of the donor must be clear and convincing."

In the case of *Reed* v. *Knudson,* 80 Utah 428, 15 P. 2d 347, the court said (page 349) :

"There was here a delivery of the instrument to a third person. If delivery was made to Young as agent for John Reed, the instrument to be held by him subject to control of the donor, then, of course, there

was no delivery to the donees. If, on the other hand, the instrument was delivered to Young with an intent on the part of Reed to divest himself of any and all control over it and that the present title and ownership pass to the donees, then the delivery was complete. Delivery is a matter of intent and the intent is to be arrived at from all of the facts and circumstances in evidence."

From the foregoing cases it is evident that the important thing is what was the intent of the donor at the time of the transactions in question. If he intended a gift, to pass a present title to the donee, then if his words and acts are sufficient to evidence that intent it is the duty of the courts to hold that such a gift has taken place; but in a case of this kind the evidence must be clear as to his intent. To our minds, there can be no question whatever but what the words and actions in this case were sufficient to constitute a gift to the defendant, if the evidence as to the intent of the deceased is sufficient to satisfy the law on that subject. Surely the transaction discloses much more in the line of words and actions than was disclosed in the case of *Boyle* v. *Dinsdale,* supra, and in that case the court without any hesitation held that there was a gift.

With this in mind, let us examine the evidence of the intention of the deceased. That the deceased desired and intended that the defendant Annie Crus should get his money there could be no question, as the evidence shows that he told the cashier of the Bank, a long time before his death, that he wished Annie Crus to have his money upon his death, and in order to effect this desire, the cashier wrote on the passbook, the ledger sheet, and the signature card the words hereinabove stated: "In case of death pay to Annie Crus, of Salt Lake City, without recourse." Without going any further in this case, we have a case almost an exact parallel with the facts in the case of *Boyle* v. *Dinsdale,* except that he intended during his lifetime to withdraw any part of this money which he desired to, and there is some question in our minds whether, without going farther, there is not sufficient evidence to show

a trusteeship in the Bank to pay this account to Annie Crus on the death of the deceased. In this connection we might state that a donor does not have to divest himself of the legal title or the control of the property in order to create a trust contingent upon his death.

Be that as it may, the deceased in this case was not content to leave it in that condition, but, when he was nearing his death, he called to his bedside the defendant and then sent for the cashier of the bank, obviously for the purpose of fixing this money so that it would go where he wanted it; and there in the presence of these two persons he expressed his desire and intention of giving this money to defendant, Annie Crus. As to just what he expressed, there is a sharp conflict in the testimony of the defendant and the cashier of the Bank; the defendant claiming that the deceased stated that he wanted her to have the money then, the cashier of the Bank stating that the deceased stated that he wanted her to have the money upon his death.

It is true that in this case the defendant is a very interested witness, and the question arises here as to whether or not, in view of the conflict of this testimony, the evidence could be clear and convincing enough to satisfy the requirements of law in that respect. In this connection it should also be noted that the cashier of the Bank is not an entirely disinterested witness either, and that there was shown in the testimony that he was a relative by marriage of certain persons whom he considered the nearest relatives of the deceased, and that it was his idea that the defendant should divide this money among such relatives, and that considerable feeling had developed between these relatives, including the cashier of the Bank, and the defendant since she received the money.

In addition thereto, there in the presence of the deceased, the cashier produced a signature card, which he, under the directions of the deceased, had the defendant, Annie Crus, sign her name to—which says: The Bank "is hereby authorized to recognize *only* the signature below in the payment

of funds or the transaction of any other business for my account." It should be noted here that this is not made a joint account with John Crus, but authorized the Bank to recognize only the signature of Annie Crus. If the deceased John Crus understood the wording of this signature card, this certainly is strong evidence that he intended complete control of that money to pass to the defendant immediately, because there is certainly nothing in this card that indicates that he intended to retain any strings whatever or any control whatever over this money during his lifetime. Also, the words which were written by the cashier of the Bank, "Will divide among nearest relatives," do not, on their face indicate any question but what the defendant was to have this money then.

We are of the opinion, if the jury believes the testimony of Annie Crus in this case, that the evidence is very strong to the effect that an immediate gift was intended. For that reason we believe that there was sufficient evidence to go to the jury on that question and that the trial court should have submitted the question to the jury under proper instructions as to the kind of evidence that was required in order to establish a gift.

The judgment is reversed and the cause remanded to the District Court of Salt Lake County for a new trial. Costs to the appellant.

FOLLAND, C. J., and HANSON, MOFFAT, and LARSON, JJ., concur.

WOLFE, J., being disqualified, did not participate herein.